Galveston, Harrisburg & San Antonio Railway Company v. ·J. R. Still.

Decided January 30, 1907.

**1.—Personal Injury—Flying Switch—Violation of Rule—Exception.**

The plaintiff, one of defendant's conductors in charge of a work train, was injured while making a flying switch; a rule of the defendant provided that "running or flying switches must not be made except where it would cause great delay to do the work in any other manner." Evidence considered, and held sufficient to support a finding by the jury that the rule against flying switches was not intended to apply to the conditions and circumstances existing at the time plaintiff was hurt, and that the case came within the exception expressed in the rule, or at least an ordinarily prudent person would have so understood it.

**2.—Violation of Rule—Not Negligence per se.**

The violation by a servant of a rule of the master is not necessarily negligence per se. This depends upon the conduct itself, and is a question of fact which should be submitted to the jury.

**3.—Charge—Assumed Risk and Contributory Negligence.**

In an action for personal injuries a charge which authorizes a recovery by the plaintiff unless the jury "believed from the evidence that plaintiff was not guilty of any negligence which contributed to his injuries and that he did not assume the risk," held not subject to the objection that it required the jury to find that plaintiff was guilty of both contributory negligence and that he assumed the risk, before they could return a verdict for the defendant. Galveston, H. & S. A. Ry. Co. v. Cherry, 17 Texas Ct. Rep., 505, followed.

**4.—Improper Testimony—Withdrawal—Harmless Error.**

The introduction of improper testimony which is at once withdrawn by counsel and excluded by the court, is not reversible error in the absence of anything to indicate that the jury were influenced by it.

**5.—Rule—Construction—Custom.**

The question being as to the proper construction to be placed upon a rule governing the performance of certain duties by an employe, testimony as· to the practical construction given it by the usual and customary manner of observing it, is admissible.

Appeal from the District Court of Bexar County. Tried below before Hon. Edward Dwyer.

*Baker, Botts, Parker & Garwood, Newton & Ward* and *W. B. Teagarden,* for appellant.—The servant assumes the risk when he violates a known rule: Gulf, W. T. & Pac. Ry. v. Ryan, 69 Texas, 669, and cases cited therein; San Antonio & A. P. Ry. v. Wallace, 76 Texas, 638; Southern Pac. Ry. v. Ryan, 29 S. W. Rep., 527; Pilkinton v. Gulf, C. & S. F. Ry., 70 Texas, 226; Galveston, H. & S. A. Ry. v. Brown, 59 S. W. Rep. (the dissenting opinion of Mr. Justice Neill on pages 935-945); Kansas & A. V. Ry. v. Dye, 70 Fed. Rep., 24; Lake Erie & W. Ry. v. Craig, 80 Fed. Rep., 488; 1 Labatt on M. and S., 365, 365a, 367. Special attention is invited to numerous cases approved on pages 952, 955.

The undisputed facts, or at least the overwhelming weight of the facts, show that the plaintiff's injuries were caused, or at least contributed to, by making a flying switch of some cars, a dangerous undertaking, which "flying switch" was made at the direction of plaintiff, and that he assisted in making it, and in doing so he was guilty of violation of one of defendant's written rules, which, as defendant's representative on the ground, it was his duty to enforce. And this violation of defendant's rule caused or contributed to his accident and injury, and he was, therefore, not entitled to recover, and it was error for the court to deny defendant's motion for new trial on this ground. Galveston, H. & S. A. Ry. Co. v. Brown, 59 S. W. Rep., 930; same case by Texas Sup. Ct., 63 S. W. Rep., 305; Canadian Pacific Ry. Co. v. Elliott, 137 Fed. Rep., 904.

The court erred in giving to the jury the second paragraph of the main charge, which reads as follows: "If you believe from all the facts and circumstances in evidence before you that the plaintiff violated said rule, and that he was guilty of negligence in doing so, if he did so, and that such negligence, if any, proximately caused or contributed to his injuries, if any, then he can not recover." Texas & Pac. Ry. v. Moore, 8 Texas Civ. App., 289; Galveston, H. & S. A. Ry. v. Ryon, 70 Texas. 56; Baltimore & Potomac Ry. v. Jones, 95 U. S., 439.

If a servant acquiesces in the violation of a rule by another servant, through which he is injured, he can not complain: Richmond & Dan. Ry. v. Dudley, 90 Va., 304; Lake Shore & M. S. Ry. v. Knittae, 33 Ohio St., 468; New Jersey & N. Y. Ry. v. Young, 49 Fed. Rep., 723; Pennsylvania Ry. v. Lynch, 90 Ill., 333; Illinois Cent Ry. v. Sporleded, 199 Ill., 184; Woods M. & S., sec. 419.

The charge was misleading: Houston, E. & W. T. Ry. v. Greer, 22 Texas Civ. App., 5.

The voluntary withdrawal of the testimony of Legge after the court had approved of its introduction in the presence of the jury did not cure the error: Smyth v. Caswell, 67 Texas, 577; Evans v. Pigg, 28 Texas, 588; Eborn v. Zimpelman, 47 Texas, 504; Gulf, C. & S. F. Ry. v. Levy, 59 Texas, 542; McCauley v. Long & Co., 61 Texas, 79.

The court erred in permitting the plaintiff to testify, over defendant's objections, in substance and effect, that the manner in which he did the switching and caused it to be done at the time of the accident, was the usual and customary way of doing the work. Gulf, C. & S. F. Ry. Co.

v. Evansich, 61 Texas, 6; Gulf, C. & S. F. Ry. Co. v. Rowland, 82 Texas, 166; East Tennessee V. & G. Ry. Co. v. Kane, 22 L. R. A., 316.

*Perry J. Lewis* and *H. C. Carter,* for appellee.

JAMES, CHIEF JUSTICE.—Appellee Still was the conductor of one of appellant's work or gravel trains and sued for damages alleged to have been sustained by injury due to the fault of a brakeman, who negligently threw the switch before the tender of the engine had entirely passed over it, thereby causing the tender to be derailed and a collision between it and the following car upon which appellee was riding.

The answer was a general denial; that appellee was appellant's vice-principal in control of the train and the work being done and of the crew; that appellee was guilty of contributory negligence in that having control as aforesaid he directed the flying switch which was being made, which was a dangerous and negligent thing to do and was in express violation of one of defendant's rules, rule 339, which reads as follows: "Running or flying switches must not be made except where it would cause great delay to do the work in any other manner; and whenever they are made the train must first be stopped and before the engine is again started the switch and also the brakes on the cars to be set out, must be tested and great care used. Running or flying switches must not in any case be made at or over any public road or crossing." That the switching could, without delay, have been made in the usual way, without danger or risk, whereas it was dangerous to make a flying switch and this was well known to appellee and in doing so he violated the rule, was guilty of negligence which caused and contributed to the accident and he also assumed the risk of the undertaking.

By supplemental petition plaintiff alleged that under the circumstances existing at the time, the rule did not prohibit the engine and cars from being handled as they were handled; that it was necessary in order to get the cars upon the side track to make just the switch attempted to be made, and the rule contemplated its being so done; that with the knowledge of defendant and its officers, under the circumstances existing, and in order to save time, defendant's employes have customarily and habitually made switches in the same manner; that he was not acting in disobedience of the rules of defendant, but that he was acting in accordance with the rule just as was customarily and habitually done on defendant's road with full knowledge and consent of defendant and its officers; and that in making the switch as he did plaintiff exercised due care and was not guilty of contributory negligence.

Defendant filed a trial amendment charging that plaintiff was further guilty of negligence in the manner in which he made the switch and conducted himself, and in not taking a stand at the brake of the car for the purpose of stopping the car. Plaintiff also filed a trial amendment, which was mostly reiterative, and which stated that in making the switch as he did he was in the exercise of due care.

A verdict for $15,000 was returned.

We find there was testimony exhibiting facts from which the jury might have found that the provision in the rule prohibiting flying switches was not intended to apply in the existing conditions and circum-

stances, but that the conditions brought the case within the exception expressed in the rule. At least they might have found, if they believed the conditions did not bring the case strictly within the exception, that the conditions were such that an ordinarily prudent person in the position that plaintiff was placed would have understood the exception to apply, and so acted. The conditions and circumstances exhibited by testimony before the jury from which these conclusions, or either of them, might fairly have been drawn, are substantially as follows:

The locality of this occurrence was at Nueces about six miles west of Uvalde, where there was a gravel pit. About thirty cars and the engine were upon the side tracks. The accident happened about 5:15 p. m. the day before Christmas, 1902. Plaintiff was conductor and in full control of the crew and the work. The work at that pit had been finished. On that date he received a telegraphic message, the original of which was not produced, but in which he testified he was told to bring the hands in on the caboose to San Antonio, provided he could not catch the passenger train No. 10 at Uvalde. The engine had become disabled and required repairs at San Antonio. This message, according to the testimony of the engineer, was that plaintiff and the train crew could come with him to Uvalde and catch No. 10 there. This communication, according to the Division Superintendent Anderson, was the provision for the transportation on No. 10. The testimony was ample to show that such an order or communication was given plaintiff by the management of defendant's road to take the engine and caboose to Uvalde and there take the passenger No. 10. Also, that as the cars were then positioned, it required switching, which, according to Anderson, the division superintendent, should not have taken more than twenty minutes, in order to get the engine and caboose in position to start to Uvalde. Other testimony was that it would have taken much longer. Nueces was not a stopping place for No. 10, which was expected to pass there in about twenty-five minutes. It was not permitted for the engine to be out upon the main line within ten minutes of the time of a passenger train. Under these circumstances, to say the least, the conclusion could be formed that it would have been impracticable, unsafe and imprudent to attempt to get the engine and caboose out by means of ordinary switching, if the crew were to get to Uvalde to take No. 10, and the only way of accomplishing this was by the means of making a drop switch.

If they had seen fit to wait until No. 10 had passed, they could have pursued the ordinary course of switching, but then they could not have taken No. 10 at Uvalde, and the arrangement that had been provided for their transportation from Uvalde would not have been available, and one of the purpose of the provision, viz.: their spending Christmas in San Antonio, would have been in a measure defeated.

Under the evidence the situation in which plaintiff and his crew were placed was this: He was directed or, as appellant puts it, permitted, to take the engine to Uvalde and there take train No. 10. The direction or permission contemplated that he would take the engine out and reach Uvalde ahead of No. 10, and the purpose expected to be accomplished by this was to enable him and his crew to spend Christmas in San Antonio. It is true, that the dispatcher who gave the order may

not have known that the engine was so positioned that it would take considerable switching to start it towards Uvalde, and a flying switch would have to be made in order to accomplish these ends, but the fact is that it reached plaintiff under substantially the above circumstances.

It was also a fact exhibited by the evidence that it would have caused delay in the objects of this order if the work had been gone about in any other manner than by making a flying switch. And any other course at that time would, to all appearances, have blocked the main line and delayed the approaching passenger train.

The first assignment of error is that the court refused to give a peremptory instruction for a verdict for defendant. The first proposition under this assignment is based on the rule 339, it being claimed that the undisputed facts are that plaintiff acted in violation of this rule, voluntarily, unnecessarily and without excuse or authority from appellant, and that this conduct on his part was the proximate, or at least an efficient contributory cause of his injury. The second proposition is that the rule was never abrogated, but was always insisted on and enforced. This latter proposition we shall not discuss, because the court in its charge treated the rule as not abrogated, and in our opinion, the assignment is not well taken, even upon that theory.

We think from the testimony as indicated above, that it was a question for the jury whether or not the circumstances surrounding plaintiff at the time of the receipt of the order or "permission" were such as would have prompted an ordinarily prudent person to proceed as he did. No doubt the desire was present with these men to go to San Antonio that evening on the approaching passenger train. They had to take that train at Uvalde in order to do so, it not stopping at Nueces. They received permission, if not an order, to do so. This contemplated, or at least was calculated to induce them to suppose that they were expected to do whatever was necessary or available under the circumstances they were in, to that end. The one who sent the order, or permission (the train dispatcher) knew where No. 10 was at the time, and must have known that in order for them to take such train at Uvalde, and at the same time conform to the ten minute rule, they had to get the engine out expeditiously. To conform to the order, and the provision made for their transportation, and the purposes for which the order was made, they had to get the engine out ahead of the passenger train.

Even if weight be given to plaintiff's recollection of what the order was, viz.: that it told him to bring the hands in on the caboose to San Antonio, provided he could not catch the passenger train No. 10 at Uvalde, the effect of this would not necessarily have to be taken to mean a direction to run the caboose to San Antonio, unless they could get the engine out by ordinary methods of switching in time to catch said train at Uvalde. No such restriction accompanied the order. It was capable of being understood to authorize their getting to Uvalde in time to take that train, if it was possible by any means consistent with safety to do so. There was the testimony of Stevenson the engineer, who stated that under the same circumstances, everything taken into consideration, he would have done the same as Mr. Still. That it was safe to do so by a flying switch under the circumstances was testified

to.  Still testified that it was not any more dangerous than in making another kind of switch, if every one attended to his duties.

The very language of the rule placed plaintiff in the position of having to judge of the circumstances, justifying or not justifying the making of such a switch, in respect to the causing of great delay by doing the work in a different manner.  Surely in the situation in which plaintiff was when the order, or "permit," came, his understanding of what it authorized or expected him to do and his attempt to do it by the only way in which it could have been accomplished, can not be said to have been palpably against the dictates of ordinary prudence.

It is held in this State that the violation of a rule is not negligence *per se*.  (San Antonio & A. P. Ry. v. Connell, 66 S. W. Rep., 246, and cases there cited.)  By this is not meant, however, that the conduct of an employe which is violative of a rule may not be so palpably contrary to common prudence, as to warrant the courts in declaring the act negligent as a matter of law.  But it is always the conduct of the party, and not simply the violation of the rule, that has this effect.  (Galveston, H. & S. A. Ry. v. Adams, 94 Texas, 106.)  The act of plaintiff in question can not be declared of that character.  It was no doubt plaintiff's duty, he being in charge of the work, to observe and enforce the rule, which however, in fact authorized a flying switch to be made when great delay would otherwise be caused; and the person called upon to observe it was also called upon to exercise judgment as to the occasion permitting a resort to such a switch; and there existed conditions and circumstances in this case from which a jury could say that it was the exercise of such judgment as an ordinarily prudent person would have used in plaintiff's situation, to have deemed the occasion one in which the rule authorized it.  Mr. Anderson, the division superintendent, stated, among other things, that he had taken action when the circumstances were such that the making of a running switch constituted a violation of the *spirit* of the rule.

This case is not within the rule stated in Gulf, W. T. & P. Ry. v. Ryan, 69 Texas, 669, and San Antonio & A. P. Ry. v. Wallace, 76 Texas, 638, in that here the act of plaintiff with reference to the rule, is attended by evidence of explanatory circumstances showing necessity, occasion or excuse for the act.

If it were held that a violation of a rule of itself, irrespective of negligence, constituted a good defense, it would open the door wide to a system by which the master could legislate for himself protection against the consequences of his own negligence.

The third assignment of error is based on facts stated as undisputed. The facts assumed are:  1st, that when Legge was stationed at the switch to throw it immediately after the engine had passed, in order to throw the succeeding cars upon the side track, the cars were being moved at a negligent rate of speed, without previously inspecting the brakes and adjusting them, without stationing a brakeman at the brake on the cars to be switched, and without taking any other precautions required by defendant's rules and by common prudence to prevent accidents.  2d, that plaintiff was guilty of negligence also in the manner in which he placed himself on the car, and in his omission to take and

use the brake to prevent the accident, which acts and omissions caused and contributed to his injuries.

What directly caused the accident was the act of Legge who threw the switch before the tender of the engine had passed over, throwing its rear wheels over upon the side track and thus forcing a collision with the water car that followed.

There was evidence that the cars were moving twenty miles an hour, which was dangerous, in that such speed would not allow reasonable time for the switch to be worked between cars. But there was testimony that they were moving five or six miles an hour. It appeared from plaintiff's statement that he was not at the brake of the water car at the time of the derailment. He had drawn the pin to separate the water car from the engine after the necessary momentum had been attained, and had climbed upon the car, and when the engine went on the side track the distance from where he was, or from the water car to the engine, was twenty-five or thirty feet, and that if he had been at the brake, he did not know but, he supposed he could have stopped the car. "I would have had time if I was there perhaps. I didn't see this wreck until too late." Stevenson, the engineer, testified that when the pin was pulled he increased the speed of the engine and sped away leaving plenty of room for the switch to be thrown, but that there was not time enough to have stopped the water car by the use of the hand brake, it might have reduced the speed a little but it couldn't have helped much. Plaintiff testified that his duty was to stop the cars when they got inside the side track. Also "I was moving that way to get at the brake, as soon as the car got to the side track to set the cars when it got in the clear." Stevenson testified—Question: "Is it customary for men riding the cars not to be at the brake handle?" Answer: "Mostly, yes, sir." The rule did not prescribe it except as it might be embraced in words "and great care used." The failure to throw the switch at the right time, when ample space was given between the cars for the purpose, could not have been reasonably anticipated. It is therefore clear that his not being at the brake at the time was not negligence as a matter of law.

The fourth assignment alleges error in the following charge which sets forth rule 339 and stated: "If you believe from all the facts and circumstances in evidence before you that the plaintiff violated said rule and that he was guilty of negligence in doing so and that such negligence, if any, proximately caused or contributed to his injuries, if any, then he can not recover." The objection stated to this instruction is that it authorized plaintiff to recover if he violated the rule, whereas the law is, as it applies to the facts and circumstances of this case, that if plaintiff violated the rule in causing the flying switch to be made and thus contributed to his injuries, it bars his recovery irrespective of whether it was prudent or not to violate it, and irrespective of whether in the performance of the work in violation of the rule he was prudent or imprudent. What has been already said in this opinion disposes of this assignment.

The fifth is that there was error in refusing the following charge: "You are further charged that even though you should find and believe from the facts that the brakeman Legge did throw the switch too soon,

as charged, and caused the tank wheels to take the side track, as charged by plaintiff, nevertheless this would not make defendant liable if the violation of the rule governing the making of flying switches caused or contributed to the accident; or if by the exercise of due care either in preparing or taking previous precautions for making the switch, or if by the exercise of ordinary care while it was being made, the accident could have been averted by plaintiff."

The proposition advanced is that it was the duty of the court to simplify the issues as much as possible and tell the jury that even though Legge was found guilty of negligence, which caused the accident, this would not necessarily convict appellant of liability if the violation of the rule contributed to the accident, or if by the exercise of due care by proper preparation for the work or by proper care in executing it appellee could have prevented it. We find the following charges given at defendant's request: "You are further charged that even if you should find that the brakeman Legge negligently threw the switch as charged, nevertheless defendant would not be responsible for this act on his part if you should further find that the plaintiff caused or permitted the said switching to be done with undue haste, and that this undue haste or speed, if any, proximately caused or contributed to bringing about the accident, and should you so find the facts to be you will return a verdict for the defendant.

"You are further charged that even though you should find and believe that the brakeman Legge did throw the switch too soon and caused the tank wheels to take the side track as charged, nevertheless this would not make defendant liable if there was a violation of rules, or negligence of omission or commission such as charged by defendant on the part of plaintiff, which in any way contributed to the bringing about of the accident as one of the proximate or contributory causes, then plaintiff is not entitled to recover and you will find for defendant." It seems to us these charges covered substantially what was intended to be accomplished by the refused charge insofar as it stated the law. The first portion of the refused charge was improper and justified its refusal.

The sixth assignment is directed against the first paragraph of the main charge which, in authorizing a verdict for plaintiff, concluded: "and if you further believe from the evidence that plaintiff was not guilty of any negligence which contributed to his injuries, and that he did not assume the risk." The point is that under this charge it was made necessary, in order to find for defendant, that plaintiff was guilty of something more than contributory negligence, to wit: that he in addition assumed the risk. We refer to the case of Galveston, H. & S. A. Ry. v. Cherry, 17 Texas Ct. Rep., 505, in which the point is disposed of adversely to appellant's contention.

The seventh is that the court erred in permitting plaintiff to testify to the effect that after the accident Legge came to him on the ground and stated to him: "It is all my fault,"—for the reason that this was not admissible as a part of the *res gestae*. The record shows that when plaintiff made this statement defendant's counsel objected on the ground stated. Before any ruling was made plaintiff's counsel asked him how long it was after the occurrence and he answered four or five minutes. The court then overruled the objection, and exception was taken. Plain-

tiff's counsel then stated they would not insist on it and the court then instructed the jury not to consider that evidence. Thus it appears that the evidence was in fact excluded. See Patterson & Wallace v. Frazer, Texas Civ. App., 15 Texas Ct. Rep., 179, and St. Louis S. W. Ry. v. Kennedy, 16 Texas Ct. Rep., 801. This disposition of the testimony became the ruling of the court, and as stated in Smith v. Caswell, 67 Texas, 577: "In the case before us the testimony was excluded as soon as it was introduced, and the jury having been then expressly told to disregard it, it is not to be presumed that it made any lasting impression upon their minds." The testimony was not of a character to affect the amount of the damages, and therefore the size of the verdict furnishes no sign that the jury were influenced by it. Nor is there anything else in the verdict that indicates this. The uncontroverted evidence was that the act of Legge was the immediate cause of the accident. The assignment is overruled.

We can perceive nothing substantial in the matter dealt with by the eighth assignment. It alleges that the court erred in permitting plaintiff to inquire of Dr. McDaniel, who had treated plaintiff soon after the accident, and who stated that he made a report in writing to defendant on the subject of plaintiff's injuries and 'condition, as to whom he delivered the report, where it was at the time of trial, and whether or not witness objected to plaintiff's attorneys having possession of the report to cross examine by, and other questions of a similar nature. It is charged that the whole of the colloquy with the witness was for the purpose of insinuating that the witness had made a report different from his testimony, and was calculated to and did prejudice the jury against defendant and the witness.

The assignment as briefed shows that it was intended by the assignment to refer to Dr. Russ and not Dr. McDaniel and we do not think this inadvertent mistake of the name of the witness in question ought to interfere with appellant's right to have the assignment considered.

It does not appear that counsel attempted anywhere in argument or otherwise to make use of this colloquy to discredit the witness or defendant's case. The witness was allowed over objections to answer that he had sent his report to defendant's claim agent. The witness stated that he had no objection at all to plaintiff's seeing the report, but defendant's counsel objected to this and the court finally ruled: "I don't know what it is and the objection is sustained as to it." There was nothing objectionable in counsel making an effort to see the report, because it might have been admissible to contradict the witness, if that should have proved to be its effect. It was, however, not admitted, and we are not placed in a position to say that it is probable any prejudice was sustained by defendant from the colloquy.

There was no error in the matter presented by the tenth assignment. Plaintiff testified that he was a brakeman and an extra conductor between Del Rio and San Antonio, by which was meant that as conductor he did not serve regularly but had been promoted and ran as conductor when other men were sick or laid off. He was entitled, in reference to the question of his earning capacity, to testify as best he could, how much of the time he was called on to work as conductor, and what he

received as such, as well as what he received as a brakeman. The portion of his testimony objected to was how much he received when acting as conductor between San Antonio and Del Rio.

The eleventh is that the court erred in permitting plaintiff to testify, in effect, that the manner in which he did the switching and caused it to be done at the time of the accident was the usual and customary way of doing the work. The proposition is that this testimony was irrelevant, because the work was done under certain written rules which governed absolutely this class of work and fixed the method; and proof that the method employed was customary was not proper to establish a standard of prudence. In other words plaintiff could not show that he was prudent by showing that it was customary for others to proceed in the same way. The ground of objection to this testimony, according to the reference appellant makes to the record, was that it was "an invasion of the province of the jury and, besides, was immaterial and irrelevant." The testimony complained of ·was that the work was done in the usual and customary way of doing the work which plaintiff had to do on that side track. There was a rule involved, which prohibited flying switches, but authorized them in a particular case. The application of the exception in the existing circumstances was· an issue.· What did the expression "where it would cause great delay," which was a relative term, mean? Persons qualified as experts in the service, could doubtless testify as to this. Testimony of the practical construction of it given by the service, such as the usual and customary practice in regard to such work, would seem to be equally admissible. The testimony was relevant and material on the issue of plaintiff's contributory negligence. San Antonio & A. P. Ry. v. Engelhorn, 62 S. W. Rep., 561; Galloway v. San Antonio & G. Ry., 78 S. W. Rep., 33. However, the witness had already testified to the same effect without objection, as follows: "No, sir, the man who took the loaded cars out of there would have to take the empty cars and take them out and make the drop just as I did, *and as is done on the road,* especially when working a work train."

The twelfth assignment complains of an excessive verdict. In passing upon this question we must take as facts credited by the jury those facts which go to support their verdict. It is not intended that we may substitute our views of the credibility of witnesses and the weight pertaining to testimony, for those of the jury. We are expected to require a reduction of the verdict in cases where, upon the most favorable view of the testimony in favor of the recovering party, the verdict seems to us unreasonably large.· A careful investigation of this matter has satisfied us that it would be improper for us to so declare in this case.

The thirteenth assignment complains of the refusal of this charge: "You are further charged that in making the flying switch at the time of the accident, or in the manner in which this piece of work was done, independent of what the brakeman Legge did, if anything, caused or contributed to cause the alleged accident, then plaintiff is not entitled to recover, and you will return a verdict for defendant if you so find." The only proposition advanced under this is that as plaintiff was defendant's trusted agent whose known duty it was to see to the enforcement of the rule, and as he actually commanded and directed the work in violation of the rule, all the consequences were assumed by him, and all that

remained to go to the jury was whether or not this conduct of his, either in violating the rule, or in the manner in which the work was conducted, caused or contributed to his injury. The discussion in preceding portions of this opinion disposes of this proposition.

*Affirmed.*

Writ of error refused.