### Missouri, Kansas & Texas Railway Company of Texas v. C. A. Thomas.

Decided January 25, 1908.

**1.—Railroad Premises—Invitation to Enter Upon—Duty of Owner.**

In a suit for personal injuries inflicted by violently propelling a car against the car in which plaintiff was engaged in unloading freight, evidence considered, and held to show that plaintiff was neither a trespasser nor a licensee upon defendant's premises, but was there by invitation of the defendant for a lawful purpose, and that defendant was liable for the injuries inflicted by its negligence.

**2.—Charge—Assumption of Fact—Harmless.**

The assumption by the court in its charge that cars on the side track of a railroad were shipped in over the line of said railroad, if not warranted by the evidence was, at least, harmless in a suit for personal injuries inflicted by the negligence of the defendant upon one engaged in unloading a car so situated.

**3.—Same—Same—Undisputed Testimony.**

Where the evidence upon an issue is undisputed, it is not error for the court to assume the issue as uncontroverted.

**4.—Negligence—No Issue—Charge.**

It is not error for the court to refuse to submit as an issue of negligence a ground upon which plaintiff did not rely by either pleading or evidence.

**5.—Verdict not Excessive.**

A verdict for $18,000 cannot be held excessive where the evidence showed that plaintiff's face was disfigured and his spinal column permanently injured, that he had suffered and would continue to suffer great pain, and in view of his age and earning capacity.

Appeal from the District Court of Grayson County. Tried below before Hon. B. L. Jones.

*Coke, Miller & Coke* and *Smith & Wall,* for appellant.—The evidence shows that appellee went into appellant's yards and into one of its cars solely on his own business, and not at all for the advantage or benefit of appellant, and without invitation, express or implied, from appellant, or from anyone who was authorized by appellant to give such an invitation, and was at the time of his injury a trespasser; also that appellant's servants did not know of his presence in the car, and did not wilfully or wantonly injure him, and a peremptory instruction in favor of appellant should have been given by the court. Galveston Oil Co. v. Morton, 70 Texas, 400; Post v. Texas & Pac. Ry., 23 S. W. Rep., 708; Andrews v. Ft. Worth & D. C. Ry., 25 S. W. Rep., 1040; Missouri, K. & T. Ry. v. Cowles, 67 S. W. Rep., 1078; Crawleigh v. Galveston, H. & S. A. Ry., 67 S. W. Rep., 141; Atchison, T. & S. F. Ry. v. Mendoza,

60 S. W. Rep., 327; Woolwine v. Chesapeake & O. Ry. (W. Va.), 15 S. E. Rep., 81; 16 L. R. A., 271, and cases cited; Kansas City, Ft. S. & M. Ry. v. Cook, 66 Fed. Rep., 115; 31 U. S. App., 277; Cleveland, C. C. & St. L. Ry. v. Tartt, 64 Fed. Rep., 823, 24 U. S. App., 504; C., C. C. & St. L. Ry. v. Ballentine, 84 Fed. Rep., 935; 56 U. S. App., 266; Dowd v. Chicago, M. & St. P. Ry., 84 Wis., 114; 54 N. W. Rep., 27; Benson v. Baltimore Traction Co. (Md.), 20 L. R. A., 714; Lachat v. Lutz (Ky.), 22 S. W. Rep., 218.

*Wolfe, Hare & Maxey,* for appellee.—In going upon premises of railway company on business with a person rightfully there not a trespasser. Dillingham v. Teeling, 24 S. W. Rep., 1094; Klugherz v. Chicago, M. & St. P. Ry. Co., 95 N. W. Rep., 586; Shelby v. Ry. Co., 3 S. W. Rep., 157; Atchison, T. & S. F. Ry. Co. v. McElroy, 91 Pac. Rep., 785; Central of Georgia Ry. Co. v. Hunter, 58 S. E. Rep., 154; Campbell v. Harris, 4 Texas Civ. App., 640; Chicago & N. W. Ry. Co. v. Dunleavy (Ill.), 39 Am. & Eng. Railroad Cases, 392; St. Louis, I. M. & S. Ry. Co. v. Fairbairn, 48 Ark., 491. On premises by implied invitation of company. Nichols v. Washington, O. & W. Ry. Co. (Va.), 32 Am. & Eng. Railroad Cases, 29; Tobin v. Ry. Co., 59 Me., 183; 3 Elliott on Railroads, sec. 1249, and authorities cited. On premises by express invitation of consignee. Missouri, K. & T. Ry. Co. v. Taylor, 85 Pac. Rep., 528; Fry v. Hillan, 37 S. W. Rep., 359. Consignee had right to go upon premises and had a right to send appellee. Toledo, W. & W. Ry. Co. v. Grush, 67 Ill., 262, 16 Am. Rep., 618; St. Louis, I. M. & S. Ry. Co. v. Fairbairn, 48 Ark., 491. Duty of railway company toward appellee on account of user of premises. Railway Co. v. Shiflet, 98 Texas, 326; Fleming v. Louisville & N. Ry. Co., 61 S. W. Rep., 58. Duty owed persons unloading cars. St. Louis S. W. Ry. Co. v. Bryson, 41 Texas Civ. App., 245; St. Louis S. W. Ry. Co. v. Brown, 69 S. W. Rep., 1010. Duty to persons on premises to welcome the coming or speed the parting guests. Hamilton v. Texas & Pac. Ry. Co., 64 Texas, 251; Gulf, C. & S. F. Ry. Co. v. Williams, 21 Texas Civ. App., 470.

BOOKHOUT, ASSOCIATE JUSTICE.—This was a suit instituted by appellee in the District Court of Grayson County, Texas, to recover of appellant damages in the sum of $40,000 on account of personal injuries he claims to have received at Sherman, Texas, on or about February 12, 1906.

For cause of action appellee alleged, in substance, that on February 12, 1906, he was in one of appellant's freight cars situated just north of Houston Street, in the city of Sherman, on one of appellant's unloading tracks; that said car was loaded with bananas for the firm of Shivel & Stewart, and was located at a point on a track which was commonly, habitually and daily used for placing cars in order that they might be unloaded by persons who had freight in the same; that it was usual and customary for people owning freight and for employes of unloading companies and the public in general, to frequent the place where said car was situated

and unload freight from the cars on said track, all of which was well known to appellant and its employes operating trains in its yards. That appellee had gone to said car to see George Stewart in regard to business affairs and for the purpose of assisting the said Stewart in unloading the fruit from said car and was rightfully in said car when appellant's employes, without giving sufficient warning, negligently and wilfully ran another car against the car where he was, with great, unusual and unnecessary force, causing him to be thrown against the walls, sides and door facing of said car. That appellant's employes operating the car and engine which struck the car in which he was situated, saw and knew that appellee and said Stewart were in said car in ample time to have avoided striking it in such manner, and knew the danger to which persons in said car would be exposed by doing so, or if said operatives did not actually know that appellee and said Stewart were in said car, they knew that said car was on one of appellant's unloading tracks where freight was commonly, habitually and daily unloaded from cars, by persons who had freight in the car situated on said track and well knew that said fruit car and other cars on said track were loaded with freight which was to be unloaded from said cars and in the exercise of ordinary care and by keeping such a lookout as a person of ordinary care would have kept, would have discovered and known that there were persons in said fruit car, in ample time to have avoided a collision with the same, and the injury, but failed to keep such lookout and to discover or ascertain whether there were persons in said car and recklessly and negligently ran said car or engine against the one in which appellee and the said Stewart were situated. That in falling appellee struck a nail or spike, and the same was driven through his cheek inflicting a painful wound, and dislocating and fracturing the bones of his spine and neck.

Appellant answered by general demurrer, special exceptions, general denial, and by special answer alleged contributory negligence in various respects, notice and assumed risk.

The cause was tried before a jury on the 24th day of January, 1907, and resulted in a verdict and judgment in favor of appellee in the sum of $18,000. Appellant's motion for new trial was overruled and an appeal to this court duly perfected.

The first assignment of error complains of the action of the trial court in overruling the defendant's general demurrer to the petition. The second assignment contends that the trial court erred in refusing to give to the jury its special charge instructing a verdict for defendant. Under the second assignment the proposition is made that the evidence shows that appellee went into appellant's yards and into one of its cars solely on his own business, and not at all for the advantage or benefit of appellant, and without invitation, express or implied, from appellant, or from anyone who was authorized by appellant to give such an invitation, and was at the time of his injury a trespasser; also that appellant's servants did not know of his presence in the car and did not wilfully or wantonly injure him, and that a peremptory instruction in favor of appellant should have been given by the court.

The appellee is a truck gardener and farmer in Sherman. Shivel & Stewart, a firm composed of Bob Shivel and George Stewart, are in the commission business and dealers in produce, vegetables, potatoes, etc., in the city of Sherman. The appellee, previous to February 12, 1906, placed an order with the firm of Shivel & Stewart for seed potatoes. On the date named appellee went to the office of the firm to ascertain about the potatoes. He asked Bob Shivel if the potatoes had come. Shivel replied that they came that day, and that it was raining and a man could hardly get them out. He told appellee that he had better go down to the depot and look at them and see if he wanted them; that George (meaning George Stewart) was down there. Appellee replied, "all right," and went down to look at the potatoes. This was about 3 o'clock p. m. Appellee saw Stewart in a car on defendant's track just east of the depot. The car was standing on the second track east of the depot, which is an unloading track. Appellee got up into the car and had a conversation with George Stewart as follows: "I said, 'George, I thought you were getting out potatoes.' He laughed and said, 'This don't look much like a potato day, does it? No, I am getting out some bananas. The potatoes are up in the other car. I have got a few bananas to get out of this car.' Appellee replied, 'Mr. Shivel sent me down here to look at them potatoes.' Stewart said, 'Well, I have got a few bunches of bananas to get out of this car; then I will go and show you the potatoes. Help me here a few minutes, will you?'" The appellee was injured as testified by himself in the following manner: "The bananas were bedded in the north end of the car. Mr. Stewart was taking them out and putting them in some crates, which are made of some hoops in the shape of a barrel, having a kind of a tow sack lining. These crates are three and a half feet high. I then assisted him in putting bananas into these crates. He couldn't hold the lining of the crates and put the bananas in there and asked me to help him. After I had been in there a little while some cars came down against us. At the time of the jar I had just set a crate of bananas over by the west door, and Mr. Stewart was getting a bunch out of the north end of the car. There was nothing in the car except these bananas and a gasoline stove. This stove was about the middle of the car. I didn't hear any warning or advice, or notice that there would be any collision. When the collision occurred I fell against the north side of the west door facing, driving a big spike nail through my jaw, and hurting the side of my head and face and also my neck and shoulder." The appellee was familiar with the custom of unloading cars in the yards of the appellant. When the appellant places cars loaded with freight on one of its unloading tracks it is expected the owner of the freight will attend to the unloading. People are there constantly unloading the cars. A man in a car unloading it expects to be notified by the employes and servants, if the railway company is going to do switching on the unloading track; and the rules of the company require that if switching is to be done on the unloading track that those doing the unloading shall be notified in order that those in the cars or about the tracks may

get into a place of safety. The only warning given was given by the switchman, Hood, who hallooed about two or three seconds before the collision occurred. This was insufficient to enable persons in the car unloading the same to get in a place of safety.

The question for our decision is, Was appellee when injured in appellant's car and on its unloading track by its invitation, either express or implied, and did appellant owe him the duty of ordinary care? Mr. Elliott in his valuable work on Railroads, vol. 3, sec. 1249, in stating the rule in reference to an implied invitation, approves that laid down by the Supreme Court of Massachusetts in Plummer v. Dill, 156 Mass., 426, as follows: "To come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged or which he permits to be carried on there. There must at least be some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the subject of the visit may not be for the benefit of the occupant."

The case of Dillingham v. Teeling, 24 S. W. Rep., 1094, was a suit against Dillingham, receiver of the Houston & Texas Central Railroad, for damages for injuries received by Teeling in passing over a defective platform to procure a lunch at a lunch-stand. The platform was the property of the railway company, and it had rented to the owner of the lunch-stand space on the platform for the lunch-stand. The court in its opinion says: "If the lunch-stand could not be approached except over the defendant's platform, was owned and was kept by someone by authority of the company, and Teeling went there to purchase a sandwich or other eatables, his business would not have been strictly with the company, and yet the defendant's platform being the passway it would be responsible for its condition to persons passing over it having business in the lunch-stand."

In the case of Campbell v. Harris, 4 Texas Civ. App., 640, the plaintiff Harris was foreman of a gang of men, and also kept a boarding car. Plaintiff's wife was staying on the car by the permission and the suggestion of defendant's agent, under whose orders plaintiff was working at the time his wife was injured. The plaintiff's wife was injured in an accident resulting from the derailment of the car in which she was lodging. In the opinion it is said: "The contention of appellant that one who is upon a train of cars, through favor or courtesy, can not recover for injuries resulting from negligence of the servants of the railway company, is doubtless the rule of some of the States of the Union, but such is not the rule here, as we understand the decisions of our Supreme Court."

The case of Nichols v. Washington, O. & W. Ry., 32 Am. & Eng. R. R. Cases, 27, was a personal injury suit. The injury occurred at the crossing of a path leading from a village to its railway station across a railway switch. The company habitually parted its cars standing on this switch, so people could pass over this pathway. The plaintiff's intestate, while on his way to the station, attempted to cross this track when the space between the parted cars was only

eighteen inches and was caught and killed by the sudden backing of the train. In its opinion, on page 29, the court says: "The law imposes an obligation on the owner or occupant to provide for the security against accident and injury to those he has invited or induced to come upon his premises by such an adaptation and preparation of his place for their reception and use as would naturally lead them to suppose that they might properly and safely enter thereon. Accordingly, it has been generally held that where the owner or occupier, either directly or by implication, induces persons to enter on or pass over his premises he thereby assumes an obligation that they are in safe condition suitable for such use, and for a breach of this obligation he is liable in damages to a person injured thereby."

The appellee had been invited by Shivel & Stewart to visit the car to examine the potatoes. He entered the car occupied by George Stewart, believing it contained the potatoes. This car was on appellant's unloading track, where the consignees of freight had the right to enter the cars to unload the freight. This car did not contain the potatoes, but they were in another car standing on the same track. Appellee, at the request of Stewart, undertook to assist him in unloading the bananas, and had been in the car about fifteen or twenty minutes before the collision occurred. It is clear that Stewart was in the car at the invitation of the appellant for the purpose of unloading it. This was why the cars of freight were placed upon the unloading track. Appellee had contracted with Shivel & Stewart for a part of the potatoes contained in a car which had been placed by appellant on this unloading track. His sole purpose in going to the car was in regard to their disposition. Appellant had so arranged its premises by setting aside this track as an unloading track and had conducted its business there for such a length of time as would lead a person to conclude that he might properly and safely enter thereon, and especially would this be the case with appellee, who was familiar with the premises and surroundings and the manner in which appellant conducted its business at this point. By the setting aside of this track for the particular purpose, by the instructions from the company to the men to be careful in moving cars upon this unloading track, by the long and continued custom of the operatives warning and cautioning people who were on, in, or about the cars that they were about to be moved, by the continued and constant use of these premises by shippers, and their employes, appellant extended an invitation to all parties interested in loading or unloading goods, or in the goods which were to be unloaded, or who might have business with such parties while so engaged that they might safely come upon said premises and enter said cars. The appellee did not go upon the yards and car out of idle curiosity. He went upon the yards of appellant and into its car for a legal and lawful purpose, and the appellant could reasonably have contemplated at the time it propelled the cars on the unloading track against the car in which appellee was, that he, or some person similarly situated, might be in the car. The appellant owed to appellee at the time he was in-

jured the duty of ordinary care. There was no error in refusing the charge instructing a verdict for defendant. As bearing upon this discussion see the following cases: Dillingham v. Teeling, *supra;* Klugherz v. Chicago, M. & St. P. Ry., 95 N. W. Rep., 586; Shelby v. Ry., 3 S. W. Rep., 157; Atchison, T. & S. F. Ry. v. McElroy, 91 Pac. Rep., 785; Central of Georgia Ry. v. Hunter, 58 S. E. Rep., 154; Campbell v. Harris, *supra;* Chicago & N. W. Ry. v. Dunleavy, 39 Am. & Eng. R. R. Cases, 392; St. Louis, I. M. & S. Ry. v. Fairbairn, 48 Ark., 491; Nichols v. Washington, O. & W. Ry., *supra.* Nor was there error in overruling a general demurrer to the petition which set up the material allegations necessary to the admission of the evidence.

The court did not err in refusing appellant's special charges Nos. 2 and 3, as complained of in the third and fourth assignments of error. These charges are based upon the theory that the appellee was at the time he was injured a trespasser on appellant's yards and car, or at most a mere licensee. We· hold that he was neither a trespasser nor a mere licensee, but a person to whom the appellant at the time he was injured, owed the duty of ordinary care.

The fifth assignment assails the third paragraph of the court's charge reading as follows: "That said Shivel & Stewart in two separate cars had shipped over defendant's line of railroad to the city of Sherman some bananas and potatoes, and said two cars were placed on one of defendant's tracks where usual and customary for cars to be placed that same might be unloaded, and said cars were standing on said track on the 12th day of February, 1906, the date plaintiff alleges in his petition in this suit that he was injured." It is contended that this paragraph is erroneous and on the weight of evidence, in that it instructed the jury that one of the undisputed facts in the case was that Shivel & Stewart had shipped two cars of bananas and potatoes over defendant's line of railroad to the city of Sherman. The evidence shows that the car of bananas and car of potatoes were both placed upon the same track. This track was one of appellant's unloading tracks, where it was customary for cars to be placed to be unloaded. The inference is they were shipped over appellant's line, but if this were not so, the appellant could not have been injured by this statement in the charge. This paragraph of the charge presents no error.

Complaint is made in the eighth assignment of the seventh paragraph of the charge as follows: "Again, if you find and believe from the evidence that one of defendant's employes, a member of defendant's switching crew, gave such warning or notice as an ordinarily prudent person would have given, under the same or similar circumstances, that said engine would be propelled against said car, then you will find for the defendant as to this issue." It is contended that under this charge appellant would not be relieved of liability on the issue of warning unless the warning received by appellee was given by a member of the switching crew. The evidence of appellee was that he heard no warning given. Appellant's switchman Hood testified that he halloed, "Look out, we are coming."

The undisputed evidence being that plaintiff heard no warning at all, and that the only warning that was given upon this occasion was by defendant's switchman Hood, the court did not err in the seventh paragraph of his charge.

The ninth assignment complains that the trial court erred in refusing appellant's special charge as follows: "If you believe from the evidence in this case that plaintiff would not have been injured (but) for the nail or spike against which he fell, and that the defendant in the exercise of ordinary care could (not) have anticipated that in switching the car a person there might be thrown against the same and injured, you will return a verdict for the defendant." No attempt was made to charge negligence on the part of the defendant on account of the nail or spike against which the plaintiff fell, and so far as the record in this case is concerned, the spike was properly so situated, and the court did not err in refusing to give appellant's eighth special requested charge.

Complaint is made of the court's refusal to give appellant's special charge No. 7 reading: "In this case you are instructed that if you believe from the evidence that plaintiff knew when he entered the car that the track upon which the car was situated was being switched, and that said car might be switched while he was in the same, yet remained in the car of his own will and choice, he assumed the risk of injury by reason of the engine or other car or cars being switched against or coupled onto said car in the ordinary manner, although you may further believe that it was defendant's custom to notify persons in cars on the unloading or team track when switching would be done and defendant on this occasion failed to give such notice, and although you may further believe defendant's servants operating the switch engine and the cars, knew of his presence therein." There was no error in refusing this charge. It was fairly covered by paragraph 8 of the court's charge.

Complaint is made that the verdict is excessive and that the verdict and judgment are contrary to the law and evidence. The verdict is a large one. In addition to the injury to his face and shoulders he received a fracture or dislocation between the third and fourth cervical vertebrae. A sudden blow from stumbling or a fall might result in paralysis or sudden death. He is compelled to wear a head mask or brace to support the parts above the injury and prevent them from pressing on the spinal cord. In view of the plaintiff's age, his earning capacity, the great suffering he has endured, and will endure, the seriousness of his injuries, and that they are permanent, we can not say the verdict is excessive.

We find no reversible error in the record and the judgment is affirmed.

*Affirmed.*

Writ of error refused.