## TEXAS & P. RY. CO. v. WYLIE.

No. 984.

Court of Civil Appeals of Texas. Waco.

Jan. 29, 1931.

Rehearing Denied March 5, 1931.

Samuels, Foster, Brown & McGee, of Fort Worth, for appellant.

Claude Spratling, H. T. Cooper, and A. B. Curtis, all of Fort Worth, and R. T. Bailey, of Dallas, for appellee.

GALLAGHER, C. J.

This suit was instituted by appellee, Mrs. M. C. Wylie, against appellant, Texas & Pacific Railway Company, to recover damages for the death of her son, Robert L. Wylie, who was run over and killed by one of appellant's cars at Hodge, a shipping station on appellant's line of railway. Said station was a shipping point for the Transcontinental Oil Company. Appellant used three parallel tracks in handling its business at that point. One was the main line and the other two were switch tracks. One of these was used as a passing track, and the other was called the stock track. These tracks were situated about 10 feet apart. The passing track was west of the main line and the stock track west of the passing track. Just prior to the accident in which Wylie was killed a string of twenty-seven tank cars was standing on the stock track. The north car of this string was about 100 feet south of a road crossing. One McMullen, appellant's car inspector, was examining these cars for the purpose of ascertaining whether they were in fit condition to be put in a train and carried to their respective destinations. It was his duty to make air couplings, see that the brakes were adjusted, and make minor repairs thereon, if found necessary. He discovered that one of these tank cars which had just been loaded by the oil company and switched out from its loading rack was leaking and not in condition to be received for transportation. It is conceded that it was the duty of the oil company to stop this leak before it could demand that the car be received and transported by appellant. It was customary in such cases, and had been for several years, that when a leak was discovered, instead of switching the car back to the loading rack for repairs, the oil company should be notified by the inspector and it should send its own workmen to repair the same on appellant's track. What precautions, if any, had theretofore been employed to prevent accident to the oil com-

pany's employees while so engaged are not disclosed. Appellant's loading rack was situated east of the main line and connected therewith by a switch track. When McMullen discovered the leak he went to this loading rack, a distance of about 200 yards, and notified Connelley, foreman thereof, of such leak, and was advised by him that workmen would be sent immediately to repair the same. Connelley instructed the deceased Wylie and one Bannister, employees of the oil company, both of whom were present and heard the conversation, to go to the car and stop the leak. McMullen saw them on their way and knew their purpose. He returned to the string of cars, resumed his work thereon, and paid no further attention to Wylie and Bannister. He took no precaution whatever to protect them while they were at work on said car. He testified that he was not expecting the switch engine to enter that track nor move the cars thereon at that time, though he further testified that the switch engine had been in the yards and moving about therein for some time prior thereto. Said switch engine, at the time Connelley, in response to McMullen's request, sent the deceased and Bannister to stop the leak in the car, was standing above the crossing on the oil company's switch track. Shortly thereafter it entered the main line, passed south from the crossing to the switch or switches connecting the stock track with the main line, backed over the same to the cars on said track, and started to pull them away. When Wylie and Bannister reached the car they proceeded at once to try to stop the leak. In order to do so it was necessary that one or both of them should go on the track under the car and tighten the fitting with a wrench. They did so. Bannister came out from under the car but Wylie remained thereunder, according to Bannister's estimate, for about three minutes, watching to see whether the tightening had effectually stopped the leak. During this time the switch engine started the string of cars and Wylie was run over and killed by the car under which he was working. The testimony does not disclose that either Wylie or Bannister did anything to secure their safety while so engaged. Bannister testified, however, that when they arrived at the car, before they went under the same, he looked south to the end of the string of cars; that at that time no engine was attached thereto and none was in sight. He further testified that he did not hear the switch engine pass south on the main line; that a string of cars was situated on the passing track which obscured his vision, and that he never discovered the engine until after Wylie was killed. Appellant's rules for the government of its employees in the discharge of their duties provided that a workman engaged in repairing a car should indicate that fact by a blue flag placed on the track or on the end of the

car; that the display of such flag advised employees operating engines that workmen were under or about such car or cars, and that no engine was permitted to couple onto or move such car or cars when such flag was displayed. The testimony showed that such flags were in the possession of McMullen or accessible to him; that no such flags were furnished or placed accessible to the oil company or its employees. There is no testimony that the deceased Wylie or his companion, Bannister, ever heard of such flags or their use.

The case was tried to a jury and submitted on special issues. The jury, in response thereto, found in substance: (a) That it was the duty of McMullen, appellant's car inspector, to see that blue flags were placed at the end of the string of cars under which the deceased was working at and prior to the accident; (b) that his failure to so place such flags was negligence; (c) that such negligence was the proximate cause of the death of Wylie; (d) that such death was not the proximate result of an unavoidable accident; (e) that appellee, by reason of such death, suffered financial loss in the sum of $5,000. On appellant's defense of contributory negligence the jury further found: (f) That Wylie, in placing himself under said car, did not keep a watch or lookout for movement thereof; (g) that such failure was not negligence; (h) that his remaining under the car for three or four minutes after the leak had apparently been stopped to ascertain whether it was effectually stopped was not negligence; (i) that his failure to require the placing of the blue flag as a signal that he was working under said car and his going under the same without the placing of such signal was not negligence; (j) that Bannister failed to keep a watch or lookout for the movement of the car under which Wylie was working; (k) that such failure was not negligence: (l) that the failure of Connelley to notify the operators of the switch engine that Wylie had gone to work under said car and should be protected from danger was not negligence. The court rendered judgment in favor of appellee awarding her a recovery against appellant for the sum of $5,000.00. Hence this appeal.

### Opinion.

Appellant, by a group of propositions, complains of the testimony of appellee's witness Leonhart. This witness was permitted over the objection of appellant, to testify that it was the rule and custom of the company that a blue flag should be placed at the end of a car while the same was being repaired; that it was the duty of the man working on or under the car to place such flag; that an outsider would not be permitted to place a flag on the tracks, though there was nothing in the rule book about that. Appellant having made the specific objection that the company's book

of rules was the best evidence of its contents, the witness was excused from the stand, procured a copy of such book of rules, returned and read therefrom that a blue flag displayed at one or both ends of a car indicated that workmen were under or about it; that a car so protected should not be coupled to nor moved; that the flag was to be displayed by those working on the car and they alone could remove it. So far as appellant's objection that the testimony of this witness previously given was not the best evidence, any error of the court in permitting same to remain before the jury was fully cured by the fact that the written rules were actually introduced and were in substance identical with the oral testimony of the witness. Appellant had theretofore introduced oral testimony on this subject from at least three of its witnesses without producing the rule book. M., K. & T. Ry. Co. v. Johnson (Tex. Civ. App.) 193 S. W. 728, 729, par. 3. The witness was properly permitted, notwithstanding appellant's objection, to testify to the usage and customs of appellant's employees with reference to the application of the rules under consideration. Such testimony was not an invasion of the province of the jury as contended by appellant. G., H. & S. A. Ry. Co. v. Still, 45 Tex. Civ. App. 169, 100 S. W. 176, 182 (writ refused); G., H. & S. A. Ry. Co. v. Collins, 24 Tex. Civ. App. 143, 57 S. W. 884, 885 (writ refused); S. A. & A. P. Ry. Co. v. Engelhorn, 24 Tex. Civ. App. 324, 62 S. W. 561, 65 S. W. 68 (writ refused). Appellant's contention that the customs testified by such witness were inadmissible because not pleaded is without merit. Such customs were merely incidental and indicated the practical application of such rules made by appellant's employees. 17 C. J. p. 518. Of course, a different rule applies where it is contended that a custom enters into and forms a part of a contract and thus determines in part the rights of the parties. Spaeth & Co. v. Bevering (Tex. Civ. App.) 290 S. W. 802, 804, pars. 3 and 4, and authorities cited.

■ Appellee's recovery herein is based on the affirmative findings of the jury that it was the duty of McMullen, appellant's car inspector, to see that blue flags were placed at the end of the string of cars under which deceased was working; that his failure to do so was negligence, and that such negligence was the proximate cause of the death of deceased. Appellant presents propositions in which it asserts that the court erred in submitting such issues. Appellant's rules introduced in evidence showed that car inspectors were required to inspect all cars and to make such repairs as were necessary, and that they should use the protection afforded by the display of such signal while so engaged. Appellant contends, in effect, that such rule prescribed and limited the duty of its representative McMullen in the premises and absolved him from any obligation to afford to the deceased Wylie while engaged in working on said car, such protection. Appellant also contends in this connection that Wylie, though an employee of the oil company, while so engaged, was in legal contemplation a temporary employee of the railway company, and that the duty of placing such signal for his protection thereupon devolved upon him. The evident purpose of appellant's rule was to prevent accidents to its employees while engaged in repairing cars undergoing inspection. Had McMullen undertaken to stop this leak himself, he would have been acting within the apparent scope of his duties. We may assume that it would have been his duty to stop the leak himself if said car had been stopped on this switch track while in transit. The custom of calling upon the oil company to stop such leaks apparently arose from the fact that the company owned the cars, loaded them at its rack, and tendered them to appellant for transportation. There is no contention that McMullen exceeded his authority in asking the oil company to send workmen for such purpose. Deceased and his companion were at work on the car, not only by invitation, but at the request of McMullen, and it was his duty as a representative of appellant to exercise due care for their safety. Payne v. Doubtful (Tex. Civ. App.) 236 S. W. 134, 136, par. 1 (writ refused); M., K. & T. Ry. Co. v. Thomas, 48 Tex. Civ. App. 646, 107 S. W. 868, 871 (writ refused); J. Rosenbaum Grain Co. v. Mitchell (Tex. Civ. App.) 142 S. W. 121, 123, pars. 1 and 2 (writ refused); M. K. & T. Ry. Co. of Texas v. Holman, 15 Tex. Civ. App. 16, 39 S. W. 130, 131; Hanson v. Ponder (Tex. Com. App.) 300 S. W. 35, 36, pars. 1 to 3, inclusive. Appellee alleged that appellant should have protected them by displaying the blue signal. The rules provided for the use of the same by the car inspector for his own protection. Such use would, under the testimony, have afforded ample protection to deceased and his companion. The jury was authorized, under the testimony before it, to conclude, as it did so, that McMullen should have taken the same precaution for their safety as the rules required him to take for his own. There is no evidence that Wylie knew anything about the rule under discussion. No such flags were furnished or placed accessible to him. We do not think he was charged with knowledge of such rule nor that the same in any way affected appellant's duty to him. Rio Bravo Oil Co. v. Matthews (Tex. Civ. App.) 20 S.W.(2d) 342, 347 (second column). The issues complained of were properly submitted to the jury.

■ Appellant complains of the action of the court in placing upon it the burden of proof on the several issues of contributory

negligence and the issues of proximate cause submitted in connection therewith. Appellant contends in propositions presented that the testimony of appellee's witnesses raised such issues, and that the same arose out of the acts and conduct of the deceased, and that the effect of such charge was to lead the jury to believe that in determining such issues they should consider the testimony of appellant's witnesses only. Appellant's contention was considered by our Supreme Court in H. & T. C. R. R. Co. v. Harris, 103 Tex. 422, 128 S. W. 897, 899, and prior authorities considered. We quote from that opinion as follows: "The rule of law as it is established in this state is that negligence, whether of the plaintiff or defendant, must be affirmatively shown, and this puts the burden on the party alleging it to make it appear either by evidence furnished by himself or by availing himself of that furnished by his adversary or by both. * * * But if the evidence [on the issue of contributory negligence] is such as to require the submission of that question to the jury at all, the fact that some or all of it may come from plaintiff does not alter the rule of law as to the burden of proof; it is still incumbent on the party who makes the charge to maintain it throughout by making the evidence preponderate in his favor. The evidence still must affirmatively show contributory negligence." The rule so announced has been consistently followed in this state. Fort Worth Gas Co. v. Cooper (Tex. Civ. App.) 241 S. W. 282, 285, par. 6; Smith v. Dallas Ry. Co. (Tex. Civ. App.) 8 S.W.(2d) 548, 549, pars. 3 and 4; Houston B. & T. Ry. Co. v. Davis (Tex. Civ. App.) 19 S.W.(2d) 77, 81, par. 3; Louisiana Railway & Nav. Co. v. Cotton (Tex. Civ. App.) 1 S.W.(2d) 393, 398, par. 5; Hambrick v. T. & P. Ry. Co. (Tex. Civ. App.) 285 S. W. 883, 884, par. 1. Appellant further contends in this connection that the charge complained of constituted, in effect, a general one, such as was considered by this court and condemned in Texas Indemnity Ins. Co. v. Allison, 31 S.W.(2d) 319, par. 1. The contention is without merit. The court's charge in this case enumerated the particular issues on which the burden of proof was placed upon appellant. A charge apparently identical in form and effect was approved by the Commission of Appeals in H. & T. C. Ry. Co. v. Stevenson, 29 S.W.(2d) 995, 999, pars. 3 and 4.

Appellant assigns as error the action of the court in refusing to submit to the jury for determination the following special issue requested by it, to wit: "Was the failure or omission on the part of the decedent Wylie to notify or warn the crew of the switch engine that moved the train of cars in question that said Wylie intended to go under said leaking car to perform repairs thereon, negligence?" Appellant in connection therewith further requested the submission of the issue of proximate cause in event of an affirmative finding thereon. The issue so requested was apparently based on the testimony of the witness Connelley tending to show that such switch engine was standing on the oil company's track at the time the deceased Wylie and his companion started to the car to stop the leak. The gist of the inquiry therein was whether Wylie's failure to notify the crew operating such engine that he intended to go under said car to repair the same was negligence. Since he left the loading rack for that specific purpose, notice given at that time would have come within the terms of such inquiry. It was of course the duty of the deceased to use ordinary care for his own safety, and a failure to do so would have been negligence. It is the essence of contributory negligence that the person to be charged therewith knew, or by the exercise of ordinary care should have known, of the circumstance or circumstances out of which the danger arose. T. & P. Ry. Co. v. Best, 66 Tex. 116, 118, 18 S. W. 224; Koons v. Rook (Tex. Com. App.) 295 S. W. 592, 597, par. 15; El Paso Printing Co. v. Glick (Tex. Civ. App.) 246 S. W. 1076, 1079, par. 5; Armstrong Packing Co. v. Clem (Tex. Civ. App.) 151 S. W. 576, 578, par. 3 (writ refused); St. Louis Expanded Metal Fireproofing Co. v. Dawson, 30 Tex. Civ. App. 261, 70 S. W. 450, 451, 453 (writ refused); G., C. & S. F. Ry. Co. v. Smith (Tex. Civ. App.) 148 S. W. 820, 822, par. 1; Boltinghouse v. Thompson (Tex. Civ. App.) 12 S.W.(2d) 253, 254, par. 1; 45 C. J., p. 651, §§ 24 and 25; Id., p. 946, § 506; 20 R. C. L., pp. 107 et seq., pars. 93 and 94. The testimony in this case showed that appellant's switch engine came to that yard, operated, and left at irregular intervals. The car which the deceased was called upon to repair had been placed in its position on the stock track by an engine of another company. That engine had left the yards. The testimony tends to show that appellant's switch engine, being the particular one, and only one, involved in the requested issue, had been working in the yards for two hours or more, and that at the time of the accident it was preparing to leave and carry with it said string of cars on the switch track. The deceased, however, was an employee of the oil company, and, so far as the testimony shows, had been engaged in the discharge of his duties at the loading rack until he started, at the direction of his foreman, to repair said car. There is no testimony showing affirmatively that he actually knew that this particular engine was operating in the yards at that time or immediately prior thereto. There is nothing to indicate that he in fact observed it standing above the crossing on the oil company's switch, where Connelley's testimony placed it at that time. Bannister

testified that he did not discover it. The requested issue apparently assumed that the deceased knew, or by the exercise of ordinary care for his safety should have known, that said engine was located where Connelley's testimony placed it at that time, and submitted the issue of whether deceased, in the exercise of ordinary care, ought to have given the suggested notice to the crew operating the same. Whether deceased actually discovered the location of said engine at that time, or whether he, in the exercise of ordinary care for his own safety, ought to have discovered the same, were, under the testimony, jury questions. 45 C. J. p. 1309, § 863, and authorities cited in note 45; Id., p. 1310, part of § 864, and authorities cited in note 57. No request was made for their submission and determination by the jury. Unless the deceased did know or ought in the exercise of due care to have discovered the location of said engine, no duty on his part to avoid injury therefrom by giving such notice to the crew operating the same arose. In the absence of a request for the submission of such issues to the jury for determination, there was no predicate for a finding of negligence in response to the issues requested. The court properly refused to submit the same.

We have examined all the propositions presented by appellant as ground for reversal and have reached the conclusion that none of them require or justify such action. The judgment of the trial court is affirmed.