RIO GRANDE, E. P. & S. F. RY. CO. et al.
v. GUZMAN.   (No. 1112.)

(Court of Civil Appeals of Texas. El Paso.
April 29, 1920. Rehearing Denied
May 20, 1920.)

**1. Railroads ⬅275(2) — Shipper's employé held entitled to protection.**

Railroad's duty toward shipper's employé who, while assisting in loading and unloading of shipper's freight at depot, was required to help in moving flat car which the railroad had failed to properly place, was that of exercising ordinary care, since such employé was rightfully upon premises, and was not a volunteer, trespasser, or mere licensee.

**2. Railroads ⬅282(9)—Negligence as to shipper's employé held for jury.**

In an action for death of shipper's employé helping to place a flat car for loading, whether railroad was negligent in having shunted a string of cars on the track without warning *held* a question for jury under evidence showing that railroad should have known that shipper's employés reasonably might be in a dangerous position in placing the flat car.

**3. Trial ⬅350(6)—Refusal to submit evidentiary issue as to negligence held not error.**

In action against railroad for death of shipper's employé crushed between cars while assisting in the loading of freight, refusal to submit issue of whether railroad in shoving cars upon track without warning knew that deceased employé was on the track *held* not error, since such issue was evidentiary and a negative answer would not necessarily have relieved railroad of liability.

**4. Appeal and error ⬅1062(2)—Refusal to submit evidentiary issues not reversible error.**

It is not reversible error to refuse the submission of evidentiary issues.

**5. Railroads ⬅282(4)—Custom held admissible to charge railroad employés with notice that shipper's employé might be on track.**

In an action for the death of a shipper's employé assisting in placing flat car in position for loading, evidence of a custom in railroad yards for shipper to move a car, when but a few feet of being in the proper place, after having been placed by railroad, *held* admissible on issue of whether railroad employés who moved cars on track, crushing deceased, were charged with notice that shipper's employés reasonably might be expected to go on track.

**6. Appeal and error ⬅880(1)—One defendant cannot complain of error as to liability of codefendant.**

In action for death of shipper's employé against shipper and railroad, railroad could not complain on appeal of any errors relating to liability of shipper; such errors not affecting railroad.

**7. Railroads ⬅282(9) — Shipper's employé held not contributorily negligent.**

Shipper's employé, crushed between cars while helping to place a flat car in position for

---

loading when railroad employés shoved a string of cars onto same track without warning, *held* not contributorily negligent as a matter of law.

**8. Death** ⊝⇒99(4)—**$10,000 verdict to wife and children held not excessive.**

$10,000 verdict to surviving wife and children for death of 27 year old common laborer, earning $1.50 a day, with expectancy of more than 37 years, *held* not excessive.

**9. Master and servant** ⊝⇒101, 102(8)—**Ordinary care required.**

The master is bound to exercise that degree of care for the protection of his servant which an ordinarily prudent person would exercise under similar circumstances, and whether he has discharged such duty depends upon the facts of the particular case and the dangers to be apprehended or avoided.

**10. Master and servant** ⊝⇒286(1)—**Negligence a question of fact.**

In the absence of a controlling statute or municipal ordinance, the question of master's negligence is one of fact, and becomes a question of law only when the facts are undisputed and reasonable minds cannot differ as to the conclusion.

**11. Master and servant** ⊝⇒297(2)—**Findings held not inconsistent.**

In an action for the death of a shipper's employé helping to place a flat car in position for loading, when railroad employés moved a string of cars upon same track without warning, judgment was properly rendered for plaintiff against shipper upon finding that shipper failed to exercise ordinary care to maintain a lookout and warn deceased, notwithstanding other finding that shipper was not negligent in failing to provide safe working place; or in ordering deceased to help place car; such findings not being inconsistent.

**12. Master and servant** ⊝⇒286(28) — **Negligence in failing to maintain lookout for cars question for jury.**

Where a shipper's employé was injured while assisting in placing a flat car in position for loading, and the shipper maintained no lookout for cars that might be moved upon same track, as that on which he was working, a peremptory instruction in the shipper's favor on the ground that there was no evidence of negligence on its part was properly refused.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Suit by Efren Aguirre Guzman, for herself and on behalf of her minor children, against the Rio Grande, El Paso & Santa Fé Railroad Company and another. Judgment for plaintiff, and defendants separately appeal. Affirmed as to both defendants.

See, also, 214 S. W. 628.

Turney, Burges, Culwell, Holliday & Pollard and Jackson & Isaacks, all of El Paso, for appellants.

Walthall & Gamble, C. M. Wilchar, and V. M. Brown, all of El Paso, for appellee.

HIGGINS, J. Mrs. Guzman, appellee, brought this suit against the Rio Grande, El Paso & Santa Fé Railroad Company and the National Mine & Smelter Company, for herself and in behalf of her minor children, to recover damages resulting from the death of Luis Guzman, her husband and the father of her minor children.

The deceased was employed by the Mine & Smelter Company. With a number of co-employés he was engaged in unloading and loading some freight for his employer upon some cars at the depot of the railway company in the city of El Paso. Mr. Handshy, also employed by' the Mine & Smelter Company, was the foreman of the party of laborers. The cars were five in number and consisted of four box cars and one flat car. They were situated upon a loading and unloading track, having been brought to the place of the accident by the switch engine and switching crew about 45 minutes before the accident occurred in which the deceased lost his life. The unloading process had been completed, and the party then prepared to load an automobile truck upon a flat car. The truck was to be driven by its own power up an inclined platform, thence upon a flat car. In order to thus load the truck it was necessary that the flat car be "spotted" flush with the inclined platform. When the string of cars was placed upon this track by the switching crew they failed to "spot" the flat car flush with the inclined platform. In order to so spot it the car was uncoupled from the rest of the string by one of the employés of the Mine & Smelter Company, and under the direction of Handshy the deceased and his colaborers were engaged in moving the car. For this purpose they pushed the car by hand, and also used crowbars in a "pinching" process. They had moved the car about four feet, and the deceased started from one side of the track to the other, passing between the flat car and the string from which it had been detached. At this moment another moving string of box cars was shoved upon the track, and came in contact with the four box cars. The force of the impact shoved the four cars against the flat car, catching and crushing the deceased, in consequence of which he died.

The foreman, Handshy, testified that when the four box cars and flat car were placed by the switching crew the flat car lacked about six feet of being properly spotted for loading the truck, and he then called this fact to the attention of the head switchman. The latter replied that he was placing the cars, and thereupon uncoupled the engine and departed.

The testimony shows that the string of nine cars was shoved in without any warning, and that Handshy and his party knew nothing of its approach until they collided

⊝⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

with the four box cars and shoved same against the flat car.

The plaintiff's witnesses, Conner and Webster, testified that for many years the custom had prevailed in the railroad yards in El Paso, including the Santa Fé, for the shipper to move a car when it had not been properly placed by the railway company and lacked but a few feet of being in the proper place, and for this purpose pinch bars would be used and the cars also pushed by hand; that pinch bars were kept at the loading platforms and used for that purpose.

The special issues submitted to the jury were substantially as follows:

(1) Did railway company without warning shove a string of box cars on the track where the deceased was working as alleged in the petition?

(2) Was that company negligent in so doing?

(5) Was such negligence, if any, a proximate cause of the injury to deceased?

(6) Did the Mine & Smelter Company fail to use ordinary care to provide a safe place for deceased to work?

(8) Did the Mine & Smelter Company fail to use ordinary care to keep a lookout and warn deceased of the approach of the car by which deceased was caught?

(9) Was such failure a proximate cause of the accident?

(10) Did the Mine & Smelter Company order deceased to do the work he was doing at the time and place he was injured?

(11) If so, was such defendant negligent in so ordering deceased?

The jury answered issues 1, 2, 5, 8, 9, and 10 in the affirmative. Issues 6 and 11 were answered in the negative. The damages were assessed at $10,000 and apportioned. Judgment was rendered against the defendants jointly and severally in said sum of $10,000. The defendants appeal separately. The appeal of the railway company will be first disposed of.

### Opinion.

Under the first and second assignments it is in effect asserted that no liability is shown upon the part of the railway company. The propositions relied upon are thus stated in the brief:

"The facts in this case show that deceased voluntarily, in so far as this appellant is concerned, placed himself in a position of danger. and that this appellant had no notice thereof, and could not be charged with such. The tracks belonged to it, and were in use in connection with its business as a carrier. It was therefore an immaterial issue as to whether the cars were shunted by it without warning, and no negligence could be predicated thereon."

"The court erred in entering judgment herein in favor of the plaintiff against this defendant, because under the evidence herein there was no negligence shown as against this defendant. The deceased, as to this defendant, occupying the position he was at the time of the accident, was a trespasser, or if in any aspect of the case it may be said that he was a licensee, then, being such, this defendant owed to him no duty except that of the exercise of ordinary care, and ordinary care under the circumstances was only due to him when engaged in the character of work he was supposed to perform in being upon the premises at that time, which was loading and unloading a car.. This defendant was not called upon to anticipate that he would put himself in a position of peril, and in such position it owed to him no duty under the circumstances.'"

As we understand this appellant's contention, it is that the deceased was either a volunteer, a trespasser, or mere licensee, and under such circumstances no actionable negligence was shown. The circumstances under which the deceased was killed have been detailed, and it apears that at the time he was rightfully upon the premises and acting in the furtherance of his master's interests. The switching crew had failed to properly place the flat car, and in assisting in so doing deceased was doing what was absolutely necessary under the circumstances, and what appellant reasonably might have anticipated would be done.

[1] He was not a volunteer, trespasser, nor mere licensee, but, on the contrary, a person. to whom this appellant at the time owed the duty of ordinary care. The authorities to this effect are clear, and it is necessary only to cite same. See Eason v. Railway Co., 65. Tex. 577, 57 Am. Rep. 606; Railway Co. v. Duncan, 88 Tex. 611, 32 S. W. 878; Bonner v. Bryant, 79 Tex. 540, 15 S. W. 491, 23 Am. St. Rep. 361; Blair v. Railway Co., 214 S. W. 936; Railway Co. v. Thomas, 48 Tex. Civ. App. 646, 107 S. W. 868; Railway Co. v. Gerald, 60 Tex. Civ. App. 151, 128 S. W. 166.

[2] Under the fourth assignment complaint is made of the refusal of a peremptory instruction to find for this appellant upon the ground that those operating the string of cars did not know that deceased was in a position of danger and would likely be hurt by reason of the movement, and no duty devolved upon such operators to ascertain whether deceased was occupying a dangerous position, and that warning was necessary; hence no negligence was shown on the part of this appellant. The testimony shows that when the four box cars and one flat car were placed the head switchman of the switching crew was informed by the foreman, Handshy, that the cars were not properly spotted to load the truck. The cars were placed there to be unloaded and loaded by Handshy and his men, and the head switchman was charged with knowledge that, if he did not properly place the flat car, it would be necessary for Handshy and his men to properly place the same. The switchmen knew that the Mine & Smelter Company employés were there to unload and load the cars, and at the time of the departure of the head switchman they were engaged in the task of unloading. In about.

45 minutes after the departure of the switching crew the string of nine cars was shunted upon the track, apparently uncontrolled and without warning of their approach, and collided with the other cars. Under the circumstances the appellant was charged with knowledge that Handshy and his men reasonably might be expected to be in a dangerous position in placing the flat car, and under such circumstances it was negligence to shunt in the nine cars without warning. The peremptory instruction was therefore properly refused.

Appellant requested the court in lieu and place of questions 1, 2, 3, 4, and 5 in the main charge to give special issue No. 4, as follows:

"Do you find from a preponderance of the evidence that defendant railroad company knew, at the time the cars in question were moved, which resulted in the accident complained of, that the deceased was on the track, and in a position of danger?"

[3, 4] It will be noted first that this issue was not unconditionally requested, but that it be given in lieu of issues 1, 2, 3, 4, and 5 in the main charge. The court gave no issues 3 and 4, but issues 1, 2, and 5 were material issues which should have been given, and there was therefore no error upon the part of the court in refusing to eliminate these issues, and in lieu thereof submit the one requested by the appellant. Furthermore, the requested issue was evidentiary. The fact that appellant did not know at the time the cars were moved that the deceased was on the track and in a position of danger would not have relieved it of liability, for it was liable if the company was charged with notice that the deceased reasonably might be expected to be on the track and in a position of danger. Had the issue indicated been given and answered in the negative, such finding would not necessarily have relieved appellant of liability. The fact that the appellant had no actual knowledge that deceased was on the track and in a position of danger was evidentiary merely upon the ultimate issue of negligence. It is not reversible error to refuse the submission of evidentiary issues.

[5] Objection is made to the testimony of the witnesses Conner and Webster, relative to the custom prevailing in the railroad yards in El Paso. This evidence was admissible for the purpose of affecting the appellant with notice that Handshy and his men reasonably might be expected to go upon the track for the purpose of properly placing the flat car.

[6] Assignments 7 to 12 inclusive, complain of the submission of issues 6, 8, 9, 10, and 11. Various objections are urged to these issues. It will be noted that the issues of which this appellant thus complains related to the liability of its codefendant, the Mine & Smelter Company. We regard the objections urged as being without merit, but if this be not true, the errors complained of in no wise affected or prejudiced this appellant, and it is in no position to complain thereof. No good purpose will be subserved by discussing the various objections urged to these issues. It is sufficient to say that they present no error which would warrant a reversal of the judgment against this appellant.

[7] Under the thirteenth assignment the proposition is advanced that under the admitted facts the deceased, as to this defendant, was guilty of contributory negligence. Appellant does not point out the evidence which it regards as conclusively showing such negligence on the part of the deceased, and it does not occur to this court that the deceased could be regarded, as a matter of law, as being guilty of contributory negligence.

Under the fourteenth assignment it is asserted that the court erred in entering judgment jointly against the appellant and its codefendant; that the facts conclusively show that the Mine & Smelter Company was guilty of negligence as a matter of law, and that if this appellant was liable it was because of passive negligence, and was entitled to a judgment over against its codefendant, and in any event this appellant's liability was subordinate to the liability of its codefendant, and was entitled to a judgment which would subordinate its liability.

Upon the former appeal of this case reported in 214 S. W. 628, it was held that the evidence does not show this appellant to have been guilty of mere passive negligence, but that it was sufficient to support a finding that it was an active tort-feasor, guilty of affirmative negligence which proximately caused, or contributed to cause, the death of deceased, and therefore not entitled to recover over against the Mine & Smelter Company. We see no occasion to change our view upon this question, and think the judgment rendered by the court in this case was proper under the evidence and findings made by the jury. Railway Co. v. Nass, 94 Tex. 255, 59 S. W. 870.

In connection with question No. 8 this appellant requested the court to charge that it was the duty of its codefendant to exercise ordinary care to provide a safe working place for deceased, and its failure so to do would be negligence; also that it was the duty of this codefendant to keep a lookout and warn deceased of danger, and its failure so to keep a lookout or warn deceased of danger would be negligence.

The appellee might have complained of the refusal of the court to give the charges indicated, but we fail to see what interest this appellant had in the matter. The refusal of these charges affords no grounds for the reversal of the judgment rendered in favor of the appellee. Furthermore, the instruction

that the failure of the Mine & Smelter Company to maintain a lookout and give warning was negligence is objectionable, as being upon the weight of the evidence.

The eighteenth assignment assails the verdict and judgment as being excessive.

[8] Deceased was 27 years of age, and had a life expectancy of 37 years and 4 months. He was a common laborer, but supported his wife and children and worked constantly. He was earning $1.50 per day at the time of his death, and previous to that time had worked in Mexico, earning $2.50 per day in Mexican money, which was worth $1.25 in gold. The verdict and judgment is not regarded as excessive. Freeman v. McElroy, 126 S. W. 657; Railway Co. v. Littleton, 180 S. W. 1194; Railway Co. v. Murray, 99 S. W. 144; Railway Co. v. Higgins, 44 Tex. Civ. App. 523, 99 S. W. 200.

Passing now to the appeal of the National Mine & Smelter Company, error is assigned to the rendition of the judgment against it jointly with its codefendant, the Railway Company. The propositions urged in support of this assignment are as follows:

"First. Appellant, having provided deceased a safe place to work, and not being negligent in ordering him to do the work, was not required to take further affirmative action for his protection.

"Second. It is not negligence not to anticipate that another will violate the law in given particular, and in not providing against such possible violation of it.

"Third. The mines company could not be required to anticipate and guard against a negligent act of the railroad company.

"Fourth. The railroad company being guilty of negligence in shoving the -string of cars back without warning, and this being a proximate cause of the injury, the mines company could not have been guilty of negligence in failing to keep a lookout."

[9] For the protection of his servant the master is bound to exercise that degree of care which an ordinarily prudent person would exercise under similar circumstances. Railway Co. v. Beatty, 73 Tex. 592, 11 S. W. 858. Whether or not he has discharged that duty depends upon the facts of each particular case, and is measured by the dangers to be apprehended or avoided. 3 Labatt on Master and Servant (2d Ed.) §§ 906 and 908, and cases there cited.

[10] Negligence vel non in this respect is ordinarily an issue of fact. In the absence of a controlling statute or municipal ordinance, it becomes a question of law only when the facts are undisputed and reasonable minds cannot differ as to the conclusion to be reached.

[11] This appellant's contention in effect is that since the jury found that it was not negligent in providing a safe working place, nor negligent in ordering the deceased to do the work he was doing at the time and place of the injury, it had therefore discharged its duty, and as a matter of law was under no obligation to exercise any further care for his protection by maintaining a lookout. To this we cannot assent. Since there is no fixed standard by which the court may arbitrarily say what conduct shall constitute ordinary care, judgment was properly rendered against this appellant upon the finding that it failed to exercise ordinary care to maintain a lookout and warn deceased of the approaching cars, which failure proximately caused his death. The jury might well have believed that this appellant acted as an ordinarily prudent person in ordering deceased to assist in the movement of the flat car and to go upon the track in the execution of the movement, but that, in view of danger from switching operations in the railroad yards, an ordinarily prudent person under the circumstances would have maintained a lookout for cars which might be placed upon that track and be a source of danger to the parties engaged in moving the flat car. The findings of the jury are consistent and well warranted under the evidence.

In support of the disposition made of this assignment see Blair v. Railway Co., 214 S. W. 936, which is very much in point.

[12] The remaining assignment presented by this appellant complains of the refusal of a peremptory instruction in its favor upon the ground that there was no evidence of negligence on its part. There was no lookout maintained by this appellant, and under the circumstances the jury was abundantly warranted in finding that it was negligent not to maintain the same so as to properly warn the deceased of danger from moving cars.

Affirmed as to both appellants.