**PAYNE, Agent, v. DOUBTFUL. (No. 8060.)\***

(Court of Civil Appeals of Texas. Galveston. Nov. 25, 1921. Rehearing Denied Jan. 5, 1922.)

**1. Railroads &copy;⇒275(2)—Persons loading ties on train invitees entitled to care.**

Employés of a tie company engaged in loading ties on a freight train were neither trespassers nor licensees, but were rightfully upon the railroad's premises on its invitation, and it owed them the duty of exercising ordinary care to avoid injuring them.

**2. Railroads &copy;⇒282(9)—Contributory negligence of loader of ties held for jury.**

In an action by an employé of a tie company engaged in loading ties on defendant railroad's freight train, who was injured by a starting of the train while he was crossing between the tender and a box car to get drinking water, his contributory negligence in climbing between the tender and box car over the cou-

pling, instead of taking some other safer route held a question for the jury; the train crew failing to ring the bell before starting as was the custom.

**3. Negligence &copy;⇒69—One need not anticipate negligence of another.**

One person is not bound to anticipate that another who owes him a legal duty will negligently fail to discharge it.

**4. Trial &copy;⇒244(4)—Charge held not to single out issue of contributory negligence and submit it under general charge.**

In an action against a railroad by employé of tie company injured while crossing between tender and box car, charge of court held not subject to the objection that it singled out the issue of contributory negligence, and then submitted it under a general charge to the jury, court having first properly defined contributory negligence, and then in a special issue having asked generally whether or not plaintiff was guilty of contributory negligence in going between the tender and the box car in the manner he did, and in other special issues having asked the jury to determine whether he was not guilty of contributory negligence in not going around the train or over the top of it.

**5. Trial &copy;⇒350(7) — Special issue requested held immaterial.**

In action against railroad by employé of tie company engaged in loading ties on freight train, who was injured while going between tender and box car to get water, court did not err in refusing to submit special issues as to whether or not plaintiff was subject to fits that incapacitated him in looking after his care and safety, and whether or not it was negligent for him to attempt to go through the train with a knowledge of his liability to have fits, such issues being covered by a special issue asking whether plaintiff was or was not affected by a fit immediately prior to or at the time of his injury, which the jury answered in the negative, and especially as the undisputed evidence showed that he was subject to fits.

**6. Trial &copy;⇒350(8)—Undisputed details not to be submitted to jury.**

It is not error to refuse to submit to the jury a detail about which there is no dispute.

**7. Trial &copy;⇒350(7)—Special requested issue held only evidentiary.**

In action against railroad by employé of tie company engaged in loading ties on defendant's freight train, who was injured while passing between the tender and a box car, court properly refused to submit special issue whether at the time plaintiff went through the train he knew that the train was likely to move at any time on instructions from the foreman under whom he was working, being only evidentiary in its nature.

**8. Trial &copy;⇒350(7)—Failure to submit immaterial matters not error.**

In action by employé of tie company engaged in loading ties on defendant's freight train, who was injured while passing between the tender and a box car, court properly refused to submit special issue as to whether

---

&copy;⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
\*Writ of error refused March 1, 1922.

plaintiff knew that the train was likely to move at any time, being an immaterial issue, because plaintiff knew that train was likely to start at any time, but not that it was likely to start without warning being given by ringing the bell according to custom.

**9. Railroads, ⊛⇒5½, New, Vol. 6A Key-No. Series—Execution against federal agent unauthorized.**

In an action for personal injuries against agent for the United States Railroad Administration operating a railroad in the state, court erred in directing issuance of execution against the defendant in its judgment against him, under U. S. Comp. St. § 1974(a), Proclamation of President Dec. 26, 1917, and Proclamation April 11, 1918.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Action by James Doubtful against John Barton Payne, agent for the United States Railroad Administration operating the International & Great Northern Railway. Judgment for plaintiff, and the Agent appeals. Reformed and affirmed.

Wm. H. Wilson, Wilson & Woodul, and Dabney & King, all of Houston, for appellant.

Stanley Thompson and Cole & Cole, all of Houston, for appellee.

GRAVES, J. In the court below James Doubtful, as a result of personal injuries, obtained a $10,000 judgment against John Barton Payne, agent for the United States Railroad Administration operating the International & Great Northern Railway at Conroe, Tex., and the latter appeals.

The main facts and steps of procedure leading to the judgment were these:

The train was a freight known as a tie train, and, in charge of appellant's operatives, was engaged at the time in loading railroad ties for the Signor Tie Company, the signals for its movements for that purpose being given by the tie company's foreman, Mr. Allen. Doubtful, among others, was an employé of the tie company aiding it in getting the ties into the train, his particular job being to help raise the ties up from the ground, which were then carried by other employés onto the train, he being called a tie raiser and they tie loaders. There was a uniform custom both for the men so engaged in loading the train to go in, through, and across the cars for water and other purposes, and for appellant's servants in charge of the engine—knowing of that habit—to ring the bell and give them warning before a train movement was started. Doubtful and his fellow employés were in the habit of getting drinking water from the tank attached to the engine, and on the occasion in question, for the purpose of getting water and in the accustomed way, he crossed the train between the cars to the opposite side from where he was working, but, finding no faucet or plug there, was crossing back between the tender and the box car attached to it, when the train suddenly started and he was thrown beneath the car and hurt.

In his petition asking a recovery for the injuries, among other grounds not now deemed material, he charged that appellant's employés in charge of the train were negligent in that they did not ring the bell before starting the train, which failure upon their part proximately caused his injuries, and further alleged that he himself was in the exercise of due care for his own safety in attempting to cross back through the train in the way he did, and was not guilty of any negligence causing or contributing to cause the accident and injuries.

In answer appellant, Payne, averred that the appellee's undertaking to cross back through the train in the manner and at the time he did constituted contributory negligence on his part in the following particulars:

"(b) He was negligent in undertaking to cross said train by going between the tender and said car.

"(c) He was negligent in attempting to cross said train by going between the tender of the engine and the car at a time when he ought to have known, and did in fact know, that the train was likely to move at any time on instruction from the foreman under whom Doubtful was working.

"(d) He was negligent in going between the tender and the car next to same when he had an easy, short, and safe route around the train, by going in front of the engine.

"(e) He was negligent in crossing the train between the tender and the car when he had a much safer way of crossing the train by climbing up the ladder and going over the top of same.

"(f) He was negligent in crossing the train by going between the tender and the car next to same when he, the said Doubtful, was subject to fits that incapacitated him from looking after his own care and safety."

He further charged that at the time of the injury Doubtful was affected by a fit, which had caused it; that he was a trespasser, not in the employ of the appellant nor in any way connected or concerned with the operation of the train; that in going to the far side of the train he was going outside his employment with the tie company; that he had no business over there, and that his only right to get in or upon appellant's train was when he was loading ties into it from the ground, or when he was riding upon it in going to a fresh pile of ties to be loaded into it; finally that in undertaking to cross between the cars he knew that the train was likely to move at any moment. There were some other defensive pleadings, which, in view of the matters pressed in this court, it is not thought necessary to mention.

⊛⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The court refused appellant's request for a peremptory instruction in his favor, also certain special charges he asked, and submitted the cause to a jury upon special issues. The ones upon which the liability of appellant was predicated, together with the jury's answers thereto, are as follows:

"Special Issue No. 1. Did or did not the employés in charge of said train on which plaintiff was working at the time of his injury ring the bell on said locomotive before starting said train?" To which the jury answered: "They did not."

"Special Issue No. 2. If in answer to the preceding issue you have stated that the employés of defendant did not ring the bell and only in that event, then answer the following: Did or did not the failure to ring the bell, if you find that they did fail to ring said bell, constitute negligence as that term has been hereinabove defined?" To which the jury answered: "It did."

"Special Issue No. 3. If you have answered the preceding issue in the affirmative and only in that event, then answer the following: Was such negligence the proximate cause, as that term has been hereinabove defined, of the injury to plaintiff, James Doubtful?" To which the jury answered: "It was."

"Special Issue No. 3½. Was or was not the plaintiff guilty of contributory negligence, as that term has been hereinbefore defined, in attempting to go between the tender and box car of said train at the time and in the manner in which he did?" To which the jury answered: "Was not."

"Special Issue No. 4. Was or was not the plaintiff guilty of contributory negligence, as that term has been hereinbefore defined, in attempting to go between the tender and box car of said train at the time and in the manner in which he did, instead of going around said train?" To which the jury answered: "Was not."

"Special Issue No. 5. Was or was not the plaintiff guilty of contributory negligence, as that term has been hereinbefore defined, in attempting to go between the tender and box car of said train at the time and in the manner in which he did, instead of going over the top thereof?" To which the jury answered: "Was not."

"Special Issue No. 6. If you have answered either issues 4 or 5 in the affirmative, and only in that event, then answer the following: Was the contributory negligence of the plaintiff in attempting to go between said tender and box car the proximate cause of his injury?" To which there was no answer by the jury.

"Special Issue No. 8. Was or was not the plaintiff affected by a fit immediately prior to or at the time of his injury?" To which the jury answered: "He was not."

"Special Issue No. 9. If you have answered the preceding issue in the affirmative then answer: Was such fit, if you have answered that he did have a fit, the proximate cause of the injury to him?" To which there was no answer.

In this court appellant nowhere contends that this verdict of the jury finding his operatives guilty of negligence lacked support in the evidence, but first and very earnestly insists that appellee Doubtful's own acts debar him from a recovery in that he was guilty of contributory negligence as a matter of law. To state the matter in appellant's own way, his proposition is:

"Where a party has a perfectly safe way to do a thing, and, without any just excuse or reason therefor, adopts a very dangerous way of doing that thing, he is held in law to have assumed all the risks arising from the dangerous manner of doing the thing. In this case the plaintiff, Doubtful, showed no excuse or justification for his going over the coupling apparatus between the tender and the box car, when by walking 20 feet forward he could have walked around the engine in perfect safety, and when he could have stepped up into the gangway between the engine and tender, on the side on which he was working, and by taking two steps across have got the water without any risk whatever."

Many cases are cited in support, the leading ones being the following: Railway Co. v. Matthews, 100 Tex. 68, 93 S. W. 1068; Holt v. Texas Midland Ry., 160 S. W. 327, 328, 329; H. & T. C. Ry. v. Clemmons, 55 Tex. 88–92, 40 Am. Rep. 799; Ratteree v. G., H. & S. A. Ry., 36 Tex. Civ. App. 197, 81 S. W. 566–568; Baltimore & Potomac R. R. Co. v. Jones, 95 U. S. 439, 24 L. Ed. 506; Rumple v. Oregon Short Line & U. N. R. Co., 4 Idaho, 13, 35 Pac. 700, 22 L. R. A. 725, 727, 728, 730–732; Hickey v. Boston & Lowell R. R. Co., 96 Mass. (14 Allen) 429–433.

[1] After the examination of these authorities, however, we are unable to agree with appellant's able counsel that they are applicable to or must rule the facts of the case at bar; they are neither cases having to do with the loading or unloading of cars, nor do they involve the effect of a uniform custom among such employés as these were of going through, in and between the cars with the knowledge of those in charge of the train, as our preliminary statement has shown was the situation here. This train's sole business at the time was the loading of ties for the tie company, and the latter's employés in doing that work—by the practically undisputed evidence—to the knowledge of the railroad operatives, were in the habit not only of crossing through the train over the drawheads between the cars in the same way Doubtful attempted to do on this occasion, but of getting across there in other ways, such as going through the box cars at the doors, or underneath them, or by a ladder over the top, or around the end of the train. They were therefore neither trespassers nor licensees, but were rightfully upon the premises on the invitation of the railroad company, which accordingly owed them the duty of exercising ordinary care to avoid injuring them. C. & O. Ry. Co. v. Plummer (Ky.) 136 S. W. 160; 33 Cyc. p. 809 et seq.; Seaboard Air Line Ry. v. Baker (Ga. App.) 87 S. E. 828;

2 Thompson on Negligence, §§ 1761 and 1841.

[2] The proof was also uncontroverted that it had been the uniform custom of the train crew, so knowing as they did that the employés of the tie company were likely to be in positions of danger, to ring the bell of the engine and give warning of moving the train, appellant's witness Mr. Allen, foreman of the tie company, testifying in that connection that it was customary to ring the bell for "an appreciable length of time before it started to give opportunity to any one who was between there to get out and not get hurt."

The only controversy touching this feature of the case was as to whether the bell did ring before the train started on this occasion. There was a sharp conflict in the testimony about that matter, but the jury, on sufficient supporting evidence, resolved it against appellant which result removes it from further concern here.

It is quite true that the other ways of getting to the water suggested by appellant in the proposition quoted existed, and some of the tie workers other than Doubtful had at times been getting it in one or the other of those ways, but the method he employed—to say the least of the effect of the testimony— was just as customarily used, and in his particular situation furnished the nearer, more convenient, and quicker way. A fair summary of his testimony outlining that situation and describing what occurred is thus made in the brief in his behalf in this court:

"(a) That it was customary for the hands to drink water out of the faucet connected with the tender of the engine; (b) that he was a tie raiser rather than a loader, and that water was usually furnished him, and that he did not go for it as often as the tie loaders; (c) that the men forgot to bring the bucket back from the boarding car when they went to dinner, which made it necessary for him to go to the tender after dinner to get water; (d) that he did go to the engine to get water, but that on this particular engine the faucet was not on the tender on the outside where he was accustomed to getting water, and that he had been in the custom of getting up in the engine in the gangway between it and the tender to get his water, and that therefore he started back without getting any water; (e) that in going for water it was customary for the men to go between the cars when they found it convenient to do so, as well as customary to go between the cars for most any purpose, as, for instance, when they finished loading ties on one side to go through to load on the other; (f) that, following this custom, he went through the cars to get his water, and was returning between the tender of the engine and the box car when the train started and injured him, cutting off his right leg; (g) that no bell was rung or warning given before the train started; (h) that it was customary to ring the bell, and he had never known it to fail to ring before this occasion; (i) that he had gotten nearly through when the train started without ringing the bell, which occasioned his getting his right leg cut off rather than his left."

There was ample corroboration by other witnesses of all the material ones of these statements; indeed, most of them were undisputed.

It was further shown that the tie raisers such as he had a stationary job, merely lifting the ties up from the ground to be then carried to the train by others; that on that account drinking water was usually brought to them, making it unnecessary for them to go across the train after it as often as the other employés; that they were paid according to the number of ties handled; and that the place they would go for the water would depend upon what was its nearest source, which on the day here involved was the engine.

In these circumstances, and merely because he did not select another way which might have proved safe, we do not think the appellee was guilty of contributory negligence as a matter of law, but that the question was clearly one for the jury. We cite the following authorities as supporting this conclusion: Missouri & O. & G. Ry. Co. v. Dereberry, 167 S. W. 30 (writ of error refused); Weatherford M. W. & N. Ry. Co. v. Thomas, 175 S. W. 823 (writ of error refused); Blair et al. v. Jefferson & N. W. Ry. Co., 214 S. W. 936; Rio Grande, E. P. & S. F. Ry. Co. et al. v. Guzman, 221 S. W. 1102 (writ d. f. w. j.).

Appellant's sole contention for contributory negligence here is that it resulted from Doubtful's having chosen the way he did when there was another and safe way open to him. The trouble with this position, as applied to these facts, is that it wholly ignores the fact that the way he chose was as safe as any other so long as the train remained stationary, and only became unsafe when it started without the prior warning he had a right to expect and to rely upon.

In discussing this precise question the court in Weatherford, etc., Ry. Co. v. Thomas, supra, thus declared the rule applicable to this class of cases:

"It should also be stated that it further appeared that appellee, instead of crossing between the cars, as he did, might have gone either to the front or rear of the train, and thus crossed the track in safety. There was nothing to prevent him doing this. In order to do so, he would have only had to go two car lengths and the length of the engine to have crossed in front, and it was but little farther to go around the rear of the train. * * *

"Appellee knew, as he testifies, that the engine was attached to the train, and that it might move at any time, and that it would be dangerous to attempt to cross while it was moving. But there was not necessarily any danger in crossing in the manner in which he did while the train was stationary. The danger was in the movement of the train without notice, and this had never theretofore occurred within the knowledge or experience of appellee, and appellee did not know it was then to be so done. We do not think it can

be said as a matter of law under such circumstances that appellee was necessarily guilty of negligence, or that a man of ordinary prudence under the same circumstances might not have attempted to cross in the manner he did, notwithstanding the fact that he might have passed either to the front or to the rear of the train."

[3] We think that declaration of the law directly fits the facts of this cause; it being well settled that one person is not bound to anticipate that another who owes him a legal duty will negligently fail to discharge it. Fort Worth & Denver City Ry. Co. v. Shetter, 94 Tex. 196, 59 S. W. 533; I. & G. N. Ry. Co. v. Gray, 65 Tex. 32.

Pursuant to these conclusions, the contention through different assignments of error that appellee was shown to have been guilty of contributory negligence as a matter of law cannot be sustained.

Further assignments to the effect that the jury's several findings acquitting the appellee of contributory negligence were either contrary to all the evidence or against its great weight and preponderance are overruled under the fact findings already made, without further discussion.

[4] Appellant next insists that the court in its charge singled out the issue of contributory negligence, and then submitted it under a general charge to the jury, ignoring and refusing his requested special charges, which, he contends, properly separate the facts bearing on the matter.

The appellee makes a number of strongly put objections to our consideration of these assignments, which appellant in his brief undertakes to group and treat as one subject, on the ground that in different respects they violate the rules.

While we are inclined to think some of these objections well taken, still, if the manner of presentment were overlooked, we do not think any of the assignments dealing with this complaint could prevail, because the court's charge is not properly subject to the construction thus put upon it. As a reference to special issues numbers 3½, 4, and 5, embodying the question of contributory negligence and hereinbefore copied will show, it did not single out that issue and submit it under a general charge; upon the contrary, specific and particular facts were called for; the court had first properly defined contributory negligence, then in special issue No. 3½ the jury was asked generally whether or not the appellee was guilty of contributory negligence in going between the tender and the box car at the time and in the manner he did; then, under 4 and 6, a determination of whether he was so negligent in going between the cars instead of going around the train or over the top of it was sought.

What appellant sought to have the court do in these objections to the charge as given and in his requested special ones, which were refused, was to have added to the issues submitted two special inquiries as follows:

"(a) Whether at the time James Doubtful went to the other side of the train from that on which he was working he knew that the train was likely to move at any time on instructions from the foreman under whom he was working; (b) whether or not James Doubtful was one who was subject at times to have fits that incapacitated him in looking after his care and safety, and whether or not it was negligence for him to attempt to go through the train between the tender and the box car with a knowledge of his liability to have fits."

[5, 6] The second of these was clearly covered by special issue No. 8 submitted by the court, asking whether the appellee was or was not affected by a fit immediately prior to or at the time of his injury; that was the only material inquiry in that connection, as obviously it could make no difference whether he was or was not subject to having fits, if he did not have one immediately before or at the time he was hurt; moreover, the undisputed evidence showed that he was subject to have them, and it was not error to refuse the submission of a detail about which there was no dispute. Consumers' Lignite Co. v. Grant, 181 S. W. 202(16); Railroad Co. v. Dawson, 201 S. W. 247(16).

[7, 8] As concerns the first of these requests, we think its refusal constituted no error for at least two reasons: (1) It was only evidentiary in its nature; (2) it raised an immaterial issue in that under the peculiar facts of the case the only pertinent question was, not whether the appellee knew that the train was likely to start at any time upon the signal of the tie foreman, but whether he knew it was likely to start at any time without a warning being given in advance by appellant's servants in charge of it. The failure to submit merely evidentiary or immaterial matters is no error. Railway Co. v. Guzman, 221 S. W. 1102; Railway Co. v. Durrett, 187 S. W. 427; Railway Co. v. Thomas, 175 S. W. 882; Kelley v. Ward, 94 Tex. 289, 60 S. W. 311.

[9] The conclusions stated dispose of the merits of the appeal. All of the assignments presented by appellant have been carefully considered, and all of them, with the exception of the twelfth, raising the objection that the court below had no authority to direct the issuance of execution against him, are overruled. The point made in the twelfth, however, is well taken. Article 1974(a), West Publishing Co's. U. S. Compiled Statutes; same book, pages 274, 275; Proclamation of the President Dec. 26, 1917; also Proclamation April 11, 1918.

The judgment has therefore been so reformed in this court as to eliminate the recital providing for the issuance of execution, and, as so reformed, has been in all things affirmed.

Reformed and affirmed.