**INDEPENDENT–EASTERN TORPEDO CO.**
**v. HERRINGTON et al. ***
**No. 1079.**

Court of Civil Appeals of Texas. Eastland.
April 12, 1932.

Rehearing Denied April 7, 1933.

*Writ of error granted.

Yancey, Spillers & Brown, of Tulsa, Okl., and Ben J. Dean, of Breckenridge, for appellant.

Caldwell, Gillen, Francis & Gallagher, of Dallas, for appellees.

HICKMAN, Chief Justice.

On or about October 17, 1929, appellee Fred D. Herrington sustained personal injuries from an explosion of dynamite. At that time he was employed by the Texas Pacific Coal & Oil Company, hereinafter referred to as the oil company, as field superintendent of production in Stephens county. His employer was carrying compensation insurance with Texas Pacific Fidelity & Surety Company, hereinafter referred to as the surety company, and he collected the compensation to which he was entitled under the Workmen's Compensation Law (Rev. St. 1925, art. 8306 et seq., as amended). This suit was instituted by him against appellant Independent-Eastern Torpedo Company, hereinafter referred to as the tordepo company, for damages on account of such injuries under allegations that they were proximately caused by its negligence in certain particulars hereinafter noticed. The surety company was joined as a party defendant in the action under an allegation that "the amount of compensation paid plaintiff on account of said injuries by said defendant is to plaintiff unknown but is well known to defendant." Its right to subrogation was recognized to the extent of its payments. The prayer as against said surety company was that it be required to set up its claim for all payments of compensation made by it to appellee. Both defendants filed answers. The answer of the torpedo company, in so far as it pleaded defenses material to a decision of the questions presented by this appeal, will be noticed more particularly hereinafter. The answer of the surety company pleaded facts showing its right to be subrogated to appellee's cause of action against the torpedo company to the amount of $5,084.72.

The torpedo company was employed by the oil company to shoot a well on the Veale lease in Stephens county. After the nitroglycerin had been lowered into the bottom of the well, and while its shooter, Frank Davidson, was preparing a time bomb for use in exploding the nitroglycerin, some dynamite, used in some manner in connection with the time bomb, exploded, killing Davidson and injuring appellee in the manner hereinafter more fully disclosed. The specific grounds of negligence found by the jury were (1) that the shooter, Frank Davidson, immediately prior to the explosion, struck the bomb container against the ground; (2) that Davidson failed to warn or notify appellee that he was about to connect the time clock with the bomb before doing so; and (3) that the torpedo company, upon the occasion in question, failed to furnish a sufficient number of employees skilled in the handling of explosives for the purpose of shooting the well. Each of these acts of negligence was found to be a proximate cause of appellee's injuries. The verdict acquitted appellee of contributory negligence and declared that the explosion was not the result of an unavoidable accident. The amount of appellee's damages was placed at $20,000. Upon this verdict judgment was rendered in favor of the surety company upon its right of subrogation for $5,084.72, and for appellee Herrington for $14,915.24. No questions are presented as between Herrington and the surety company as to its right of subrogation in the amount decreed by the judgment. The torpedo company appealed.

The questions presented for decision in appellant's brief will be considered in their order.

Error is assigned to the action of the trial court in overruling the torpedo company's motion for an instructed verdict. As a ground for this contention, it is claimed that the undisputed evidence establishes that Frank Davidson, the shooter, was not its servant at the time of the explosion, but was the servant of the King Time Bomb Company. The evidence discloses that the oil company employed the torpedo company to shoot its well with twenty quarts of nitroglycerin. Frank Davidson was not then in the regular employ of the torpedo company, but was employed by it as an extra shooter when it had occasion to use him, and for his services he received $10 per shot. Ordinarily the nitroglycerin in the bottom of the well is exploded by the use of a jack squibb. On the occasion in question, the oil company requested the torpedo company to use a time bomb manufactured by the King Time Bomb Company. This bomb was purchased by the oil company and not furnished by the torpedo company. When shooters would use this time bomb, they would report such fact to the company manufacturing it and would be paid $6 for each one used. The King Time Bomb Company was not engaged in the business of shooting oil wells, but was engaged in the business of manufacturing bombs to be used for that purpose. The torpedo company was engaged in that business, and was employed by the oil company, not merely to furnish nitroglycerin with which to shoot the well, but to shoot the well. This was done by causing an explosion of nitroglycerin at the bottom of the hole. For this purpose it employed shooters. While in the process of carrying out its contract with the oil company to shoot the well in question, the explosion occurred which resulted in appellee's injuries. This explosion was found by the jury to have resulted, not from any inherent defects in the bomb, but from the negligence of the shooter employed by appellant.

■ It is contended by appellant that, while Davidson was its general servant, he was the special servant of the King Time Bomb Company, and that his acts of negligence were not committed while he was acting for his general master, but while he was acting for his special master. It is a sound and well-established rule of law, as asserted by appellant, that a general servant of one employer may become the particular servant of another, who may become liable for his acts while performing a particular service. But that rule has no application under the facts in this case. In order for it to apply, the person to whom the general employer intrusts his servant must have a proprietary interest in the work in which the servant is used and must have the right to exercise exclusive control of the servant in carrying on that work. "He is deemed the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents not merely in the ultimate result of the work, but in all its details." Cunningham v. Railroad, 51 Tex. 503, 32 Am. Rep. 632. The applicable test is stated in 18 R. C. L. p. 784, in this language: "In determining whether, in respect of a particular act, a loaned servant is the servant of his original master or of the person to whom he has been furnished, the general test is whether the act is done in the business of which the person is in control as a proprietor. * * *"

■ The King Time Bomb Company was not the proprietor during any step of the preparations for shooting this well. It was concerned in manufacturing and selling the device to be used for that purpose, and to promote its business paid bonuses to shooters who used its products. On the other hand, the torpedo company contracted as an independent contractor to shoot the well and was in control of the entire operation as a proprietor. Under these facts we know of no reason or authority warranting the conclusion that Davidson was not its servant at the time of the explosion, and the first proposition is overruled.

The court, in its charge to the jury, defined "agent" as follows: "The term 'agent', as used above, is one who has authority from another to act for him in a matter of some business or transaction, and in performing said business or transaction acts under the direction and at the instance and request of such other person."

To which definition appellant excepted in this language: "This defendant excepts to the definition of the term 'agent' because it is not a legal term requiring definition, and is a term of ordinary signification and is understood by every one; and, secondly, because the definition as given is an incorrect definition and prejudicial and misleading, and especially misleading under the facts of this case, because it tends to inform the jury that an agent is one who acts for another in any capacity; whereas, under the facts of this case, it is shown in the evidence that Frank Davidson was the agent of the defendant in placing the shot in the well, but was not the agent of this defendant in preparing and lowering the bomb in question; and under the pleadings and the evidence in this case, the only injury complained of is with reference to the explosion of the said bomb."

The only issue submitted to the jury in which the word "agent" was used was as follows: "Do you find from a preponderance of the evidence that Frank Davidson was, at the time of the explosion in question, the agent or servant of the Independent-Eastern Torpedo Company in the preparation of the bomb in question?"

■■ It will be noted that this issue limits the jury in its answer to the "time of the explosion." We have some doubts as to whether the exception is sufficient to raise any question other than that the undisputed evidence shows that Davidson was not the agent of appellant in preparing and lowering the bomb, a question which has been disposed of in our consideration of the first proposition. But, if the exception be construed as sufficient to point out that the definition authorized the jury to answer the special issue above quoted in the affirmative if they believed Davidson was the agent of appellant for any purpose, that objection is fully met by a consideration of the issue which limited the jury to a determination of whether he was such agent "in the preparation of the bomb in question." It is our conclusion that the definition was not subject to the objection made thereto, and appellant's contention is overruled.

■ As a special defense to appellee's cause of action, appellant set up in its answer that, "on or about the 27th day of January, 1931, the Texas Pacific Fidelity & Surety Company, for a valuable consideration, and a valuable consideration other than that expressed in the assignment hereinafter set up, and other than any payments that might have been due plaintiff under the Workmen's Compensation Act, purchased from plaintiff all of his rights, claims and choses in action against this defendant growing out of or incident to the injuries described and set up in plaintiff's petition and vested in said Texas Pacific Fidelity & Surety Company full power and authority in the name, place and stead of plaintiff to release, discharge and acquit this defendant for all claims against it, or growing out of said explosion set forth in plaintiff's petition, a substantial copy of which assignment is hereto attached, marked Exhibit A, and made a part hereof." Follows then the allegation that thereafter the appellant, for a valuable consideration, purchased from

said surety company an assignment of said cause of action which had theretofore been assigned by appellee to said surety company, and that appellant is now the owner of same and appellee has no right to maintain this action. The exhibit attached to the pleading will not be copied in full, but it unquestionably undertook to assign appellee's cause of action against appellant to the surety company and authorize and empower said company to release, discharge, and acquit the torpedo company from all of appellee's claims against it on account of the damages caused by the explosion in question.

To this pleading the appellee interposed certain special exceptions which were by the court sustained, and the rulings of the court on these several exceptions are assigned as errors. We have concluded that one of these exceptions, at least, was properly sustained. It is therefore unnecessary to determine the correctness of the rulings on the others, and we shall discuss only that ruling which we uphold, the effect of which is to render the defense pleaded unavailing. The substance of the exception which we hold the trial court properly sustained was that it affirmatively appeared from the allegations of the pleading that the assignment was by an employee under the Workmen's Compensation Law of Texas to the insurance carrier, which, in turn, adjusted the liability with the negligent third person, and that there was no allegation that the Industrial Accident Board or a court of competent jurisdiction had conducted any hearing or entered any order of approval with reference thereto. Our Workmen's Compensation Law, in article 8307, R. S. 1925, § 6a, provides for the subrogation by the insurance carrier to the rights of the injured employee against a negligent third person to the extent that such insurance carrier has paid compensation to the injured employee. The concluding sentence of that section is as follows: "The association shall not have the right to adjust or compromise such liability against such third person without notice to the injured employee or his beneficiaries and the approval of the board, upon a hearing thereof."

The pleading affirmatively disclosed that appellee was an employee under the Workmen's Compensation Law; that the surety company to whom he assigned his claim against appellant was the association, and that appellant was the third person whose alleged negligence caused appellee's injuries. The exact question for our determination is: Do the transactions pleaded by appellant as a defense fall within the condemnation of the statute quoted above; there being no allegation that same were approved by the Industrial Accident Board? The language does not expressly prohibit the assignment by the employee to the association of his chose in action against the negligent third person, and,

if the right to make such assignment without the approval of the board is denied by the statute, the legislative intent to do so must be found from a construction of the language employed. This provision of the statute was made solely for the benefit of the employee and his beneficiaries, and was designed to protect them in a time of need from their own improvidence and the urgency of their financial necessities. The party against whom that protection is afforded is the association, which has the strong incentive of self-interest to adjust or compromise claims against the negligent third person. Had the association in the instant case made a tentative agreement with the negligent third person prior to acquiring the assignment from the employee, there would be no question, we take it, but that the transaction would amount to an adjustment or compromise of "such liability." Is it any the less so because, according to the allegations, the settlement with the third person was made subsequent to the obtaining of the assignment? We think not. So far as the employee is concerned (and he is the only person whom the statute was designed to protect), the liability against the torpedo company was adjusted when he executed and delivered the assignment of his claim to the surety company, provided that assignment is effective. When the surety company assigned the claim to the appellant, the same was extinguished. If these transactions are upheld, their effect is to fully settle and adjust appellant's liability without the approval of the Industrial Accident Board, the very thing the statute seeks to prevent. We are cited to no case which we deem decisive of the question, but a somewhat similar state of facts was before the Fort Worth court in Lancaster v. Hunter, 217 S. W. 765. In that case the assignment to the association was construed to be only for such amount as it was entitled to be subrogated to under the statute, but it is significant that the opinion points out that the settlement made with the association had not been approved by the Industrial Accident Board, thus disclosing that court's opinion that the statute was applicable to assignments by the employee to the association. We too believe that it was the intent of the Legislature that an assignment by an injured employee to the association of his cause of action against a negligent third person, and a subsequent settlement with the third person, should not be binding unless approved by the Industrial Accident Board, and, so believing, we uphold the action of the trial court in sustaining the special exception urged to this defense.

We do not think it would be profitable to write at length upon appellant's contention that appellee was guilty of contributory negligence as a matter of law. To participate in an operation attended by some latent danger

does not render one guilty of contributory negligence as a matter of law. Quanah, etc., Ry. Co. v. McWhorter (Tex. Civ. App.) 136 S. W. 1162; Payne v. Doubtful (Tex. Civ. App.) 236 S. W. 134. At the time of the explosion the nitroglycerin had already been lowered in the bottom of the well. The only dangerous instruments left on top were a few sticks of dynamite. They were not dangerous until connected with the time device. There was testimony that the shooter promised to warn appellee before connecting the dynamite with this device, but that he neglected to do so. That is one of the unchallenged findings of the jury. There is evidence also to the effect that, as soon as appellee discovered that Davidson had connected the time clock and the dynamite, he started to run, but was only able to take a few steps before the explosion occurred. It requires no citation of authorities to establish the proposition that the question of whether one is guilty of contributory negligence is a jury question, and that it should not be taken away from the jury unless the facts are of such a character that reasonable minds could not differ on the conclusion to be drawn therefrom. We overrule this contention.

In submitting the issues as to whether or not appellant was guilty of the specific acts of negligence alleged, the form of the issues in each instance was as follows: "Do you find from a preponderance of the evidence that * * *?" It is insisted that the court erred in failing to instruct the jury that the burden of proof was upon appellee to establish by a preponderance of the evidence the affirmative of said special issues. This exact question has been decided so many times that we shall not undertake to collate the authorities. The issues themselves require that answers thereto be based upon a preponderance of the evidence. The effect of this requirement is to place the burden upon the one holding the affirmative of such issues. Many of the cases so holding are collated in Speer's Law of Special Issues in Texas, p. 184, § 134. This court has had occasion to so hold in at least three cases. See Commercial Standard Ins. Co. v. Lee (Tex. Civ. App.) 37 S.W.(2d) 789; Vletas v. Stagner (Tex. Civ. App.) 45 S.W.(2d) 1009; Texas Indemnity Ins. Co. v. Bridges (Tex. Civ. App.) 52 S.W.(2d) 1075.

The assignment complaining of the admission of certain testimony to the effect that the shooter requested appellee to fill some cans with sand is without merit, and, if the testimony was improperly admitted, it was harmless. We shall not therefore write upon that question.

It is assigned that the judgment is excessive. The recovery was for $20,000, admittedly a large sum of money. At the time of his injuries, appellee was 37 years of age,

and was drawing a salary of $225 per month. There is evidence that, as a result of the explosion, he suffered the total loss of his left eye and a permanent injury to his right eye, left forearm, right hand, left leg, and his entire nervous system. There was evidence of severe physical pain and mental anguish, and also expert testimony that appellee was permanently and totally disabled to perform labor. There was evidence from appellant's viewpoint tending to disprove the contention that appellee was permanently and totally disabled, but this evidence made only a fact issue. The jury, who had the benefit of observing appellee and hearing him testify, has set his damages at $20,000. The trial judge has overruled the contention that the amount is excessive, and we cannot say that he abused his discretion in so ruling, or that the amount found by the jury was not warranted by the record.

Having considered and overruled each question presented, it is our order that the judgment of the trial court be affirmed.

FUNDERBURK, J., dissents. See 59 S.W. (2d) 1108.